# Harton's Estate (No. 1).

*Beneficial associations—Death benefits—Beneficiaries—"Legal representatives."*

Where a foreign beneficial association was chartered "for the mutual protection and relief of the members, and for the payment of stipulated sums of money to the family or heirs of the deceased members of such association," and a certificate is issued payable to the member's "legal representatives," the death benefits are payable upon the member's death to his heirs at law, although he may have by will given such benefits to certain designated relatives. In such a case it is immaterial that after the certificate was issued the law was changed so that executors, administrators or assigns of deceased members could be made beneficiaries, if it appears that the member survived the change in the law for many years, and never surrendered his original certificate, and accepted a new one containing the names of the substituted beneficiaries.

Argued Nov. 1, 1905. Appeal, No. 152, Oct. T., 1905, by Bertha Harton Orr, from decree of O. C. Allegheny Co., May T., 1905, No. 3, dismissing exceptions to adjudication in Estate of G. Bruce Harton, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.
The fact are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to adjudication.

*Charles P. Orr*, with him *Thomas C. Lazear*, for appellants.— The beneficiary has ordinarily no vested interest in the beneficial certificate: Heasley v. Heasley, 191 Pa. 539.

The persons now claiming to be the "legal representatives" of the decedent have therefore had no vested interest in the beneficial certificate, and whether they come within that designation depends upon the construction of the certificate at the time the money was paid.

Great stress was laid on the fact that there did not seem to have been a change of beneficiaries, as provided in the by-laws. No application was needed to change the beneficiaries, because the original certificate naming "legal representatives," answered the same purpose and obviated the necessity for such application: Marsh v. Supreme Council, 149 Mass. 512 (21 N. E. Repr. 1070); Richmond v. Johnson, 28 Minn. 447 (10 N. W. Repr. 596); Masonic Mut. Benefit Society v. Burkhart, 110 Ind. 189 (10 N. E. Repr. 79); Durian v. Central Verein, 7 Daly, 168.

The beneficial certificate should be construed in conformity with the laws of Pennsylvania: Keatley v. Ins. Co., 187 Pa. 197; Maneely v. Knights of Birmingham, 115 Pa. 305.

The rule in Pennsylvania seems to be that unless the words of the charter are clearly prohibitive or restrictive, the contract must be carried out as it was made: Donithen v. Independent Order of Foresters, 209 Pa. 170.

The words "legal representatives," descriptive of the beneficiaries in the certificate, mean in this case executors: Day v. Life Ins. Co., 111 Pa. 507; Osborn v. First Nat. Bank, 175 Pa. 494.

*George M. Harton*, for appellees.—The association having been incorporated under Ohio laws, and being a beneficial organization, the Ohio statutes and the charter and by-laws must define and control the power of designation of beneficiaries: Arthars v. Baird, 8 Pa. C. C. Rep. 67; Supplee v. Knights of Birmingham of Pennsylvania, 18 W. N. C. 280; Northwestern Masonic Aid Association v. Jones, 154 Pa. 99; Ballou v. Gile,

50 Wis. 614 (7 N. W. Repr. 561); Sup. Lodge Knights of
Honor v. Nairn, 60 Mich. 44 (26 N. W. Repr. 826).

The validity of designation of beneficiaries, and the interpre-
tation of the words used, must be governed by the law of Ohio:
Niblack on Benefit Societies, sec. 141; Story on Conflict of
Laws, secs. 242, 243, 272; Wharton on Conflict of Laws (3d
ed.), sec. 401; Dougherty v. Snyder, 15 S. & R. 84; 1 Bacon
on Benefit Societies (3d ed.), sec. 175, 247; Scott v. Duffy,
14 Pa. 18.

If the deceased member undertook to dispose of the fund
under his will, as the executors claim, still the will does not
affect the case, because, under the law, the member had no
vested interest in the fund; it was no part of his estate, and
he could not dispose of it by will: Arthur v. Odd Fellows
Beneficial Association, 29 Ohio, 557; Masonic Aid Assn.
v. Jones, 154 Pa. 99; 1 Bacon on Benefit Societies (3d ed.),
sec. 237; Daniels v. Pratt, 143 Mass. 216 (10 N. E. Repr.
166); Union Mutual Association v. Montgomery, 70 Mich.
587 (38 N. W. Repr. 588); Beatty's Appeal, 122 Pa. 428.

As the association has prescribed the form for change of
beneficiary, that form must be pursued; otherwise no change
can take place: Masonic Mut. Assn. v. Jones, 154 Pa. 107;
Vollman's App., 92 Pa. 50; Brown v. A. O. U. W. 208 Pa.
101.

The member having named his legal representatives as bene-
ficiaries, not having specified any person or persons coming
within the above classes, except as by "legal representatives,"
he meant to designate his heirs or next of kin: State v. Stand-
ard Life Association, 38 Ohio, 281; State v. Peoples' Mutual
Association, 42 Ohio, 579; National Mutual Aid Association
v. Gonser, 43 Ohio, 1 (1 N. E. Repr. 11); Supreme Council v.
McGinness, 59 Ohio, 531 (53 N. E. Repr. 54); State v. Moore,
38 Ohio, 7; Sarjent v. Knights of Honor, 158 Mass. 557 (33
N. E. Repr. 650).

But in order to preserve the contract, the words "legal rep-
resentatives," have been held to be broad enough to include
heirs or next of kin, which construction should hold here:
Bishop v. Grand Lodge, 112 N. Y. 627 (20 N. E. Repr. 562);
Ins. Co. v. Armstrong, 117 U. S. 591 (6 Sup. Ct. Repr. 877);
Duncan v. Walker, 1 Yeates, 213; Gutridge v. Vanatta, 27

Ohio, 366; Masonic Aid Assn. v. Jones, 154 Pa. 99 ; Masonic Mut. Assn. v. Jones, 154 Pa. 107 ; Comly's Estate, 136 Pa. 153 ; Osborn v. First National Bank, 175 Pa. 494 ; Rankin's Estate, 13 Pa. C. C. Rep. 617 ; Ralston v. Waln, 44 Pa. 279.

OPINION BY MR. JUSTICE STEWART, January 2, 1906 :

G. Bruce Harton, a resident of Allegheny county, in this state, was the holder of a beneficial certificate issued by the Knights Templar and Masonic Mutual Aid Society in the sum of $5,000, payable to his legal representatives. He died February 20, 1904, unmarried and without issue. By his will he gave the residue of his estate, " together with moneys due from life insurance," share and share alike, to his sister, Mrs. William M. Orr, and his niece, Margaret Fertig.

A controversy having arisen with respect to the fund between these residuary legatees and the heirs at law, it was agreed that the fund should be paid over to the executor of the will, and the rights of the parties with respect thereto should be determined on the audit of the executor's account. It resulted in an award of the fund to the heirs at law, and the residuary legatees have taken this appeal from the decree.

The relation between Harton and the association was contractual, and the contract is to be interpreted in the light of conditions existing when it was entered into. The association was a beneficial society organized under the laws of the state of Ohio. The act authorizing associations of this character, expressly indicates the purpose and objects of the same, and to this extent places a limitation upon their powers and privileges. The purpose and objects, as expressed by the act, are " for the mutual protection and relief of the members, and for the payment of stipulated sums of money to the family or heirs of the deceased members of such association." The contract with Harton was to pay " his legal representatives " the sum of $5,000. If we are to accept this designanation of beneficiaries as meaning what the words used in their primary sense imply, executors or administrators, it would result that the association had contracted to do something outside of its powers. Such construction is always to be avoided, where there is a secondary sense which would make the contract conform to law. The law does not presume that

parties to a contract intended by it the accomplishment of an illegal object, but, on the contrary, every presumption is allowed in favor of a legal purpose; and so it is that when words are susceptible of two different senses, they are to be understood as to have a legal and actual operation, not by way of concession or correction, but as the true interpretation of the governing purpose of the parties. The rule thus stated is one of many used to discover the intention of the parties, which is always allowed to govern when ascertained. The rule imposes no intention, but seeks to discover the true one.

The words "legal representatives" have a secondary sense, well recognized, which harmonizes entirely with the purposes and objects of the association. The instances are not few in which they have been held to mean heirs at law. "The terms 'legal representatives,' 'personal representatives,' etc., are often used in statutes and instruments of writing in a broader sense, so as to include all persons who stand in place or represent the interests of another, either by his act or operation of law:" 18 Am. & Eng. Ency. of Law (2d ed.), page 814. "The word 'representative' may mean the next of kin of decedent or executors or administrators, according as the intention of the decedent is manifest in the will:" Appeal of Trustees of the University of Pennsylvania, 97 Pa. 187.

The application of this rule then gives us not a possible or probable understanding of the parties to the contract, but an understanding which, for all judicial purposes, is to be regarded as definitely ascertained. As thus interpreted this contract when made provided for the payment of a stipulated sum to the heirs of G. Bruce Harton. Did it so continue until his death in 1904?

In 1891 the objects and purposes of these beneficial associations were extended, by a supplement to the original act, so that thereafter executors, administrators or assigns of deceased members could be made beneficiaries. In certificates thereafter issued, in which the stipulated sum was payable to legal representatives, these words would necessarily be given their primary sense, and be understood as meaning executors or administrators. Harton survived this change in the law some thirteen years. During all this time he had the right under the rules of the association to appoint other beneficiaries, in the pre-

scribed mode, by surrendering his original certificate and accepting a new one with the names of the substituted beneficiaries therein, but he did not exercise this right. His certificate remained at his death as it was when originally issued, payable in terms to his legal representatives.

It is argued on behalf of appellants, that surrender and substitution in this case were not required, since by the change of the law it was competent for the association to contract for the payment of the stipulated sum to executors and administrators, and that the amended law was so impressed on this earlier contract as to impose on the words " legal representatives " their primary meaning; that Harton is presumed to have known of the change, and his retention of the original certificate, under these circumstances, requires that the contract be interpreted as of the time of his death.

We fail to see the force of this argument. The earlier contracts of this association stand clear of the amended law of 1891. The amendment was not curative in any sense. If this particular contract was invalid before, it was none the less so after the amendment. But it was not invalid, as we have seen; it was a valid and subsisting contract that required payment of the stipulated sum to the heirs at law. Had Harton died prior to the adoption of the amendment, it is not open to question that his heirs could have successfully asserted their right to the money. The amendment did not interfere with their right; nothing could defeat it but an unequivocal act on the part of Harton, in conformity with the rules of the association, appointing other beneficiaries. His attempt at a testamentary disposition of the fund was futile, for the reason that he had no property in it: Masonic Aid Association v. Jones, 154 Pa. 99; and for the further reason that the rules of the association provided that change of beneficiaries was to be made by surrender of certificate. Neither Harton's attempted disposition of the fund by will, nor the fact that for thirteen years prior to his death the certificate that he held was in conformity to the letter of the amended law governing the association, and that certificates issued during that period in the same terms gave the stipulated sum to the executor or administrator, can be considered as affecting the rights settled under the original contract. We are concerned with Harton's

desires and purpose with respect to this fund only as they find expression in the original contract, no subsequent act of his that could change or qualify them agreeably to law or the rules of the association being shown. It is familiar law, but will bear repetition here, that a contract is to be construed in reference to the time when it was made, and to contemporaneous laws and usages : 2 Story on Contracts, p. 43.

There is nothing else in the case that calls for consideration here. The conclusion reached by the court below was correct, the appeal is dismissed at the cost of appellants and the decree is affirmed.