## UNSATISFIED CLAIM AND JUDGMENT FUND OF MARYLAND *v.* HAMILTON, ET AL.

[No. 97, September Term, 1969.]

*Decided December 8, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY, and SMITH, JJ.

*William E. Brannan, Assistant Attorney General,* and *Peyton Paul Phillips,* with whom were *Francis B. Burch, Attorney General,* and *Frederick J. Bower* on the brief, for appellant.

*John Wheeler Glenn,* with whom were *Leroy W. Preston, O'Connor & Preston,* and *Edwin F. Nikirk* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

We are here confronted with that often frustrating but sometimes gratifying judicial duty of ascertaining the intent of the legislature; frustrating because in Maryland there usually is little prepassage evidence of intent, and gratifying because the usual paucity of objective evidence leaves room for the exercise of judicial perceptiveness and perspicacity in determining intent.

The Maryland Unsatisfied Claim and Judgment Fund Law (the Statute), Code (1967 Repl. Vol.), Art. 66½, §§ 150 to 179, provides in §§ 158, 159 and 160 that a qualified person who holds a valid judgment in excess of $100 for damages from injury or death caused by a motorist may be paid his judgment up to the limits set by

the Statute on order of the court after a finding that he meets the prerequisites of § 159. Paragraph c of that section is the part of the Statute here pertinent. It excludes from the right to payment one who at the time of the accident was operating or riding in an uninsured motor vehicle owned by him and also excludes "the personal representative" of a person who was so operating or riding in such a motor vehicle.

The appellees, the widow and child of a motorist who was killed while operating an uninsured car owned by him, successfully sued the other motorist and, regarding themselves as qualified persons holding a judgment potentially payable by the Fund, petitioned the court for payment. The Fund resisted their claims on the ground that each was a personal representative of the deceased within the meaning of the Statute and therefore excluded from the class entitled to payment. Judge Schnauffer, in the Circuit Court for Frederick County, held that the legislature intended to exclude from payment by the Fund only the executor or administrator of a motorist who was operating or riding in an uninsured vehicle owned by him — which would bar recovery from the Fund on judgments under § 112 of Art. 93 of the Code for pain and suffering of the injured decedent, hospital expenses and funeral expenses—and did not intend to bar payment to those specified under Lord Campbell's Act (Art. 67, §§ 1-6 of the Code) as entitled to the damages they sustained by reason of the death of their breadwinner.

We think that in light of the background and history of the Statute, the limits it puts on those who may benefit from its remedial purposes, and the breadth of the meaning that the term "personal representatives" can have, that Judge Schnauffer's scanning of the intent of the legislature was myopic.

The Statute was taken from and patterned after the similar law then in force in New Jersey. *Mundey v. Unsatisfied Claim and Judgment Fund Board*, 233 Md. 169;

*Maddy v. Jones,* 230 Md. 172. We have from time to time looked to the New Jersey decisions for enlightenment as to the meaning and effect of the Statute. *Unsatisfied Claim and Judgment Fund Board v. Holland,* 241 Md. 294, 299. New Jersey's wrongful death statute, formerly Revised Statutes, N. J. § 2:47, now N.J.S.A. 2A:31, provides that suit is to be brought by an administrator *ad prosequendum* if the deceased died intestate or by his executor if he died testate, although the recovery, which is the "pecuniary injuries" suffered, is not part of the estate but goes to the family. *Frasier v. Public Service Interstate Transp. Co.* (2d Cir.), 244 F. 2d 668. The New Jersey Unsatisfied Claim and Judgment Fund law, like the Maryland law, does not permit a person who sustains damage while operating or riding in an uninsured vehicle, caused by a financially irresponsible person, to be paid by the Fund. The New Jersey Supreme Court held in *Robson v. Rodriquez,* 141 A. 2d 1, 7, that if the legislative intent were read to mean that a person who sustains damage while operating his uninsured car could not recover from the Fund but that if he should die even from causes unrelated to the accident, his personal representative could, the statute would have been construed to mean that an absurd and anomalous result would occur, a construction that courts will avoid if at all reasonably possible. *See* 2 Sutherland, *Statutory Construction* (3rd Ed.), §§ 4917 and 4919 (and notes on pp. 434-436) ; *Height v. State,* 225 Md. 251, 259. The Court held:

> "The Act does not reveal any intention to grant the personal representative of a disqualified decedent greater rights than those possessed by the decedent himself. Such an imputation would be inconsistent with the readily discernible intention to exclude persons injured in the course of operation and use of an uninsured vehicle. The statute in its entirety reflects an overall design to place a personal representative on the same footing as the decedent whom he represents."

The Maryland Statute, in the provision with which the New Jersey Court was concerned in *Robson*, bars both the operator of an uninsured car and his personal representative.[1]

The primary purpose of the Statute in Maryland, as in New Jersey, was to mitigate and ameliorate hardships caused by financially irresponsible and uninsured motorists where the claimants have no other source of compensation. The policy of excluding from the benefit of the Fund the class of persons which largely created the need for the remedial legislation has an easily discernible rational basis. The legislature apparently concluded that if this irresponsible group were excluded from coverage, its members and future potential members might be induced to become insured so that they might qualify for coverage. If this legislative optimism proved sound, the number of uninsured vehicles — the evil that produced the Statute—would be lessened.

Unless the sanction the legislature applied to induce motorists to become insured is deemed applicable not only to the operator and his estate but to those who can recover under Lord Campbell's Act, the same absurd and anomalous result the New Jersey Court avoided will result in Maryland. An owner-operator of an uninsured vehicle could receive at the negligent hands of an uninsured motorist serious and permanent injuries which disabled him for life from supporting his wife and child. He—and through him his wife and child—could not receive the benefits of payment of a judgment for his injuries from the Fund. Yet if he died a day or a week after the accident, his wife and child could recover all the benefits that he—and they through him—would have been disqualified from receiving if he had lived. Anoma-

---

1. It is significantly noteworthy that it was after the decision in *Robson v. Rodriquez* in 1958 the legislature of Maryland amended by Ch. 438 of the Laws of 1961 paragraph c of § 159 to its present form, the change being to bar not only the uninsured owner-operator but also his personal representative by adding the words "nor is he the personal representative of a person who was so operating or riding in such a vehicle * * *."

lously, however, in the latter situation his executor or administrator could not receive payment for a judgment for pain and suffering, medical and hospital expenses and funeral bills under § 112 of Art. 93 of the Code.

If the term "personal representative" is construed to mean more than an executor or administrator, a rational interpretation of the Statute results.

The primary meaning of the term personal representative is an executor or administrator of a person deceased, and it will receive that meaning unless a contrary intent can be perceived, in which case the meaning of the term becomes sufficiently broad to cover any person who with respect to his property and rights stands in the deceased's place and represents his interests, whether transferred to him by the act of the deceased or by operation of law. The broader meaning has been found to have been intended in wills, contracts and statutes. 2 *Bouvier's Law Dictionary*, Rawle, 3rd Ed. 1911; *Black's Law Dictionary*, 4th Ed. 1466; *Mutual Life Ins. Co. v. Armstrong*, 117 U. S. 591, 29 L. Ed. 997; *In re Harton's Estate* (Pa.), 62 A. 1058, 1059; *Sterns v. M. F. A. Mutual Ins. Co.* (Kansas City, Md. Ct. App.), 401 S.W.2d 510, 517-519. The broader meaning has been perceived in Maryland. *Albert v. Albert*, 68 Md. 352; *Robinson v. Hurst*, 78 Md. 59; *Preston v. Connecticut Mut. Life Ins. Co.*, 95 Md. 101.

The term legal representative, which is almost always held to be synonymous with the term personal representative, has been construed in the area with which we are now concerned to mean a member of the family entitled to benefits under a wrongful death statute. *See Zeagler v. Commercial Union Ins. Co.* (D. Ct. of App. 3rd D., Fla.), 166 So. 2d 616, *cert.* dismissed by Supreme Court of Florida, 172 So. 2d 450. Florida requires all automobile liability insurance policies to include an agreement to indemnify the insured for damages arising out of an accident with an uninsured motorist. Florida requires a wrongful death action to be brought by a widow or other dependent, if one survives. The policy made the insurer

liable "to pay all sums which the insured or his legal representative shall be legally entitled to recover as damages * * *." The Court held that a widow could recover from the insurer for wrongful death damages. The same result was reached in *Sterns v. M. F. A. Mutual Ins. Co.* (cited above as authority for the broader meaning of the term personal representative), where the Missouri Court —the Kansas City Court of Appeals—held at p. 519 of 401 S.W.2d that:

> "We uphold [the purpose of the statute requiring uninsured motorist coverage in liability policies] by declaring that the term 'legal representative' used in the policy, as it applies to a person or persons claiming damages for a wrongful death, includes all persons who may have the right to bring an action [under the Missouri wrongful death statute], and that its meaning is not restricted to an administrator or executor."

*See also* Annotation, *Uninsured Motorist Clause—Death,* 26 A.L.R.3d § 4, pp. 940-941, where the annotation summarizes the *Sterns* holding as follows:

> "The court stated that the term 'legal representative' had no fixed meaning in the law, nor the same signification in every case, and that therefore the court would apply a meaning to it that would be fair and reasonable, consistent with the entire context of the language in which the words were employed, to the end that the purpose of the uninsured motorist coverage would be effectuated rather than defeated."

We think that the legislature of Maryland intended to bring about the same result that the New Jersey legislature intended to and did bring about when, in its wisdom, it denied one who was operating or riding in an uninsured car owned by him the benefits granted others by the statute and that it intended to make the status of

the uninsured owner the decisive criterion for recovery and to make his disqualification extend not only to his administrator or executor but to all those who stand in his place or could become entitled to recover by reason of the accident because of their relationship to him. This being so, we conclude that the meaning the legislature intended to convey by the use of the term personal representative in the context in which it is found was the broader meaning that the cases have said it may have.

*Order reversed, with costs, and petition for payment from the fund denied.*