# PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY *v.* DORIS M. GARTELMAN ET AL.

[No. 1202, September Term, 1978.]

*Decided September 13, 1979.*

The cause was argued before GILBERT, C. J., and MELVIN, J., and K. THOMAS EVERNGAM, Associate Judge of the Second Judicial Circuit, specially assigned.

---

\* Note: *Certiorari* granted, Court of Appeals of Maryland, November 16, 1979.

*M. Natalie McSherry,* with whom were *Louis G. Close, Jr.,* and *Whiteford, Taylor Preston, Trimble & Johnston* on the brief, for appellant.

*Lee Gordon,* with whom were *Gordon & Goodman, P.A.* on the brief, for appellee Doris M. Gartelman. *Ronald H. Jarashow,* with whom were *William A. Franch* and *Goldsborough, Franch & Collett* on the brief, for other appellee.

MELVIN, J., delivered the opinion of the Court.

The issues in this appeal involve the proper application of the Personal Injury Protection Endorsement (the PIP Endorsement) and the Uninsured Motorists Insurance Endorsement (the UM Endorsement) to a policy of automobile liability insurance, issued October 27, 1976, by the appellant, Pennsylvania National Mutual Casualty Insurance Company (Penn National) to Gilbert J. Gartelman, the husband of appellee, Doris M. Gartelman.

On July 13, 1977, while Mrs. Gartelman was operating a Garelli "moped" on a public highway in Anne Arundel County, Maryland, she allegedly sustained personal injuries when she was forced off the highway by an unidentified motor vehicle. The moped was owned by Mr. Gartelman. It may be generally defined as a vehicle with two wheels in tandem designed to be operated by human power with the assistance of a small internal combustion engine. Mr. Gartelman's policy listed seven different motor vehicles owned by him as "covered automobiles." The moped was not so listed.

Mrs. Gartelman looked to Penn National for benefits under the PIP Endorsement and the UM Endorsement of her husband's policy. Penn Mutual denied coverage under either endorsement because of a certain exclusion provided in each endorsement. Mrs. Gartelman and her husband thereupon filed a petition for declaratory judgment seeking a declaration that benefits were available to Mrs. Gartelman under each endorsement. The Gartelmans joined the Maryland

Automobile Insurance Fund (MAIF) as a defendant in the action and requested a further declaration that in the event the court found no coverage under the UM Endorsement in the Penn National policy, MAIF would "be required to accept the claim of the Plaintiffs under the terms and conditions of Article 48A [Annotated Code of Maryland]."

Penn National's motion for summary judgment on the issue of the PIP Endorsement was denied; instead, summary judgment in favor of Mrs. Gartelman was granted on that issue. MAIF's motion for summary judgment, in which MAIF successfully contended that Mrs. Gartelman was covered by the UM Endorsement in the Penn National policy, was granted. Penn National filed a timely appeal from the order of court (Goudy, J.) directing that these two judgments be entered.

The issue as to each endorsement is whether an exclusion provided in the endorsement is legally effective to deny coverage to Mrs. Gartelman.

I.

## THE PIP ENDORSEMENT.

Section 539 of Article 48A (Md. Ann. Code, 1979 Repl. Vol.) provides in pertinent part that no policy of motor vehicle liability insurance may be issued after January 1, 1973, unless it affords minimum medical, hospital, disability, and loss of income benefits up to $2,500 (the PIP coverage) for *"the named insured and members of his family residing in his household . . . injured in any motor vehicle accident* (including an accident involving an uninsured motor vehicle or a motor vehicle whose identity cannot be ascertained) . . . ." (Emphasis added.) Section 540 provides that benefits required under section 539 shall be payable without regard to fault. Section 545 provides for permissible exclusions from the coverage prescribed by section 539 and reads as follows:

> "The coverages prescribed under § 539 of this article may exclude from benefits thereunder any person otherwise insured under the policy who:

(a) Intentionally causes the accident resulting in the injury, or

(b) Is injured while operating or voluntarily riding in a vehicle known by him to be stolen, or

(c) Is injured while in the commission of a felony or while in violation of § 21-904 of the Transportation Article.

(d) With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options or with specific exclusions. (1972, ch. 73, § 1; 1977, ch. 765, § 13.)"

Penn National sought to comply with the mandate of section 539 by including in the policy issued to Mr. Gartelman its "Maryland Personal Injury Protection Endorsement." The endorsement contained, however, the following exclusion:

"This insurance does not apply:

(a) ...

(b) ...

(c) to bodily injury sustained by the named insured or any relative while occupying ... any motor vehicle owned by the named insured ... and which is not an insured motor vehicle."

"Named insured" is defined in the endorsement to mean:

"the person or organization named in the declarations and if an individual [Mr. Gartelman], includes his spouse if a resident of the same household [Mrs. Gartelman]."

"Insured motor vehicle" is defined in the endorsement as:

"a motor vehicle of which the named insured is the owner, to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged."

"Motor vehicle" is defined in the endorsement as:

"an automobile and any other vehicle, including a tractor, operated or designed for operation upon a public road by any power other than animal or muscular power."

Thus, it is clear that under the terms of the endorsement the exclusion quoted above deprives Mrs. Gartelman of coverage because she (a "named insured") sustained bodily injury while occupying a motor vehicle owned by a "named insured" (Mr. Gartelman) and which was not insured.

Penn National concedes that the endorsement exclusion "is not specifically provided for in § 539." Nor, of course, is it included in the list of exclusions permitted by section 545. For these reasons Judge Goudy held that the exclusion resulted in less coverage than that required by law and was, therefore, ineffective. We agree.

Section 539 mandates that the benefits of PIP coverage be afforded to, among others, "the named insured and members of his family residing in his household" who are "injured in any motor vehicle accident." It is not disputed that but for the exclusion, Mrs. Gartelman fits the category of persons to whom coverage *must* be afforded. A well-established rule of statutory construction was expressed by the Court of Appeals in *State Insurance v. Nationwide,* 241 Md. 108, 117, 215 A.2d 749 (1966).

"Where a statute expressly provides for certain exclusions, others should not be slightly read therein by implication, for if the Legislature intends other exclusions it is so easy to add them to the already-named explicit ones. CF. *Vanderford v. Farmers' Bank,* 105 Md. 164; *Fowel v. State,* 206 Md. 101; 2 *Sutherland Statutory Construction* (3 ed.), § 4915.

Here, the Legislature has provided in section 545 for certain permissible exclusions from the coverage mandated by section 539. The exclusion contained in Penn National's PIP Endorsement is not among them. Penn National would

have us add to that list, by judicial fiat, an exclusion that the Legislature did not see fit to provide. This, we decline to do.

Penn National argues that our decision in *Lord v. Maryland Automobile Insurance Fund,* 38 Md. App. 374, 381 A.2d 23 (1977), supports the conclusion that the disputed exclusion is permissible. In that case, the claimant, a non-resident of Maryland, sought PIP benefits from the named insured's insurance carrier after sustaining injuries in an automobile accident while he was driving the named insured's automobile with her consent in Louisville, Kentucky. The insured's insurance policy contained a provision that excluded from its PIP coverage "any person other than the Named Insured or a member of his family who is a resident of the same household *if the accident occurs outside of Maryland.*" (Emphasis added.) In upholding the validity of the exclusion, we found no statutory bar to "imposing a contractual territorial limitation which excludes [from PIP benefits] non-residents of the State of Maryland." We cited authority (Couch on Insurance 2d § 37.803 (1961)) to the effect that "[t]erritorial use limitations are valid" and "are not conditions." We found in the Maryland statutes concerning automobile insurance "no legislative intent" to bar the territorial exclusion challenged in that case.

We are not persuaded that the same considerations that convinced us to sanction the territorial exclusion in the *Lord* case require approval of the exclusion in the case now before us.

In enacting section 539 of the Maryland Insurance Code, we think the Legislature intended to create two classes of persons to whom the benefits of PIP coverage must be afforded. The first class includes the named insured and his family members residing in his household "injured in any motor vehicle accident," and the second class includes "other persons" who are entitled to the benefits of PIP coverage only when a vehicle to which the policy applies is involved.[1]

---

1. Art. 48A, § 539:

". . . The benefits, or their equivalent, shall cover the named insured and members of his family residing in his household (except such persons as may be specifically excluded in accordance with § 240C-1

With respect to the first class, to which Mrs. Gartelman clearly belongs, the language of the section does not condition coverage upon the occupancy of an "insured motor vehicle" at the time of the accident. The members of that class are entitled to coverage when injured in *"any"* motor vehicle accident [2] even when an "insured motor vehicle" is not in any way involved in the accident. Because Penn National's exclusion in its PIP Endorsement does condition coverage for members of the first class upon their occupancy of "an insured motor vehicle" it is inconsistent with statutory requirements and is illegal and ineffective.

## II

### *THE UNINSURED MOTORIST ENDORSEMENT*

Section 541 (c) of the Insurance Code (Art. 48A) provides:

> "(c) *Uninsured motorist coverage.* — In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. The coverage required under this subsection (c) shall be

---

of this article) injured in any motor vehicle accident (including an accident involving an uninsured motor vehicle or a motor vehicle whose identity cannot be ascertained), *other persons injured while occupying the insured motor vehicle* as a guest or passenger, or while using it with the express or implied permission of the named insured (except as provided in § 240C-1 of this article), and pedestrians injured in an accident *in which the insured motor vehicle is involved* or individuals injured in, on, or alighting from any other vehicle operated by animal or muscular power in an accident *in which an insured vehicle is involved. . . ."* (Emphasis added.)

2. Section 538 of Art. 48A (Insurance Code) defines "accident" as "any occurrence involving a motor vehicle, other than an occurrence caused intentionally by or at the direction of the insured, from which damage to any property or injury to any person results."

in such form and subject to such conditions as may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. *In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243-I.* The coverage required under this subsection shall be primary to any right to recover from the Maryland Automobile Insurance Fund pursuant to § 243H of this article." (Emphasis added.)

The coverage afforded by section 243H includes the following:

"(a) . . .

(1) Claims for the death of or personal injury to a qualified person or for damage to property in excess of $100, arising out of the ownership, maintenance or use of a motor vehicle in this State where the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained or it is established that the motor vehicle, at the time the accident occurred, was in the possession of some person other than the owner without the owner's consent and that the identity of the person cannot be ascertained; *provided that*

(i) *The claimant was not, at the time of the accident, operating or riding in an uninsured motor vehicle owned by him and is not the personal representative of the person so operating or riding in such a vehicle. . . ."* (Emphasis added.)

Section 243-I sets the amounts payable to a claimant under section 243H.

In compliance with section 541 (c), the policy issued by Penn National contained an endorsement (the UM Endorsement) providing that Penn National would

> "... pay all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle. ..." (Emphasis added.)

The endorsement provides that "an insured" is:

> "(a) the named insured and any designated insured *and, while residents of the same household, the spouse and relatives of either;*
>
> (b) any other person while occupying an insured highway vehicle; and
>
> (c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above."

Penn National does not dispute that Mrs. Gartelman is an "insured" within both the endorsement definition and the "omnibus clause" of the basic automobile liability policy. Nor is it argued that under these circumstances, even though the *statute* requiring uninsured motorists coverage for an "insured" does not define the word, Penn National would not ordinarily be required by the statute (section 541 (c)) to afford uninsured motorist coverage to a person in Mrs. Gartelman's position.[3] Penn National's contention is that Mrs. Gartelman

---

3. *See* State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So. 2d 95 (1974), where the Supreme Court of Alabama, in interpreting Alabama's similar statute requiring uninsured motorist coverage, said:

> "While we do not read the statute as requiring every automobile liability insurance policy to include an 'omnibus clause', nevertheless once an automobile liability policy is issued extending coverage to a certain class of insureds under such a clause, uninsured motorist coverage must be offered to cover the same class of insureds." 292 So. 2d at 99.

We agree with that statement. *Compare* Mullis v. State Farm Mut. Auto. Ins.

is excluded from coverage solely because of the following exclusion contained in the UM Endorsement:

"This insurance does not apply:

(a) . . .

(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured."

"Highway vehicle" is defined in the UM Endorsement to mean:

". . . a land motor vehicle or trailer other than

a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

b) a vehicle operated on rails or crawler treads, or

c) a vehicle while located for use as a residence or premises."

Unlike the PIP Endorsement, there is no definition of "motor vehicle" in this endorsement. Assuming, without deciding, that a moped is a highway vehicle as that term is used in the UM Endorsement, it becomes evident that the terms of the endorsement exclusion preclude coverage for Mrs. Gartelman's injuries. The injuries were sustained while she was occupying an uninsured highway vehicle owned by the named insured (Mr. Gartelman).

Once again, however, we must measure that exclusion against statutory requirements. The statute (section 541 (c)) requires that uninsured motorist coverage "in no case . . . be less than the coverage afforded a qualified person under Article 48A §§ 243H and 243-I." There is no contention in this appeal that Mrs. Gartelman is not a "qualified person." Section 243H (a) (1) (i), however, permits an exclusion from

_____

Co., 252 So. 2d 229 (Fla. 1971), where the Supreme Court of Florida reached essentially the same result by judicially defining the word "insured".

the benefits otherwise afforded a qualified person. This statutorily permitted exclusion provides that coverage will not be afforded if at the time of the accident "[t]he claimant was ... operating or riding in an uninsured motor vehicle owned by him...."

In recent years, the courts in several states that, like Maryland, require automobile liability insurance policies to provide uninsured motorist coverage have had occasion to consider the validity of the policy exclusion of the same type here considered, *i.e.,* a provision that excludes from coverage bodily injury to a person otherwise covered if the injury occurred while that person was occupying an uninsured vehicle owned by the named insured or his family members resident in the same household. *See,* A WIDISS, A GUIDE TO UNINSURED MOTORIST COVERAGE, § 2.9 (1969 & Supp. 1978); Medina, *Insurance: Validity of the Owned-but-Uninsured Motor Vehicle Exclusion Under the Uninsured Motorist Act,* 28 OKLAHOMA LAW REVIEW 894 (1975). Where the exclusion is not specifically authorized by statute, it appears that "[c]ourts in a growing number of states — probably now characterized as a distinct majority of the jurisdictions in which the issue has been reached — have adopted the position ... that the exclusion is in conflict with the uninsured motorist statute. These courts reason that the endorsement provision is ineffective because it reduces the scope of coverage required by the statute mandate." Widiss, *supra,* § 2.9, pp. 24, 25, 1978 Supp. and cases cited therein.

Penn National argues that its UM Endorsement exclusion does not result in providing less coverage than that required by the Maryland statute. It argues that the endorsement exclusion is no broader than that allowed by the statutorily permitted exclusion in section 243H. We disagree — for two reasons:

1. Under section 243H the "claimant" for bodily injury indemnification in this case is Mrs. Gartelman. Under the stipulated facts, she was not the owner of the moped. She, therefore, does not fit the category of persons for whom the

statute permits an exclusion.[4] She, as the "claimant," was not, "at the time of the accident, operating or riding in an uninsured motor vehicle *owned by [her]."* (Emphasis added.)

2. Although the moped Mrs. Gartelman was occupying at the time of the accident was "uninsured", it is not a "motor vehicle" within the meaning of the statutory exclusion contained in section 243H. Penn National argues that a moped comes within the definition of "motor vehicle" contained in section 538 of subtitle 35 (Motor Vehicle Casualty Insurance — Required Primary Coverage) of the Insurance Code (Art. 48A). There, "motor vehicle," as used in that subtitle, "mean automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power but does not include a vehicle as defined in § 11-165 [taxicab] and § 11-105 [bus] of the Transportation Article of the Annotated Code of Maryland." It may well be that a moped does come within the definition of "motor vehicle" *as used in that subtitle,* but section 243H containing the statutory exclusion is in a different subtitle — subtitle 16 (Maryland Automobile Insurance Fund) of the Insurance Code (Art. 48A). Subtitle 16A contains its own definitions section (section 243L). Under that definitions section, "motor vehicle" is not defined, but it is provided that:

"As used in this subtitle,

. . .

(c) *'automobile'* shall include trucks, vans, and trailers, but *shall not include motorcycles or motorbikes.* (Emphasis added.)

. . .

---

**4.** As said by the Court of Appeals in Unsatisfied C. & J. Fund v. Hamilton, 256 Md. 56, 259 A.2d 303 (1969),

"The policy of excluding from the benefit of the Fund the class of persons [owner-operators of uninsured motor vehicles] which largely created the need for the remedial legislation has an easily discernible rational basis. The legislature apparently concluded that if this irresponsible group were excluded from coverage, its members and future potential members might be induced to become insured so that they might qualify for coverage. If this legislative optimism proved sound, the number of uninsured vehicles — the evil that produced the statute — would be lessened." 256 Md. at 60.

(f) *'uninsured motor vehicle'* means a motor vehicle as to which there is not in force security meeting the requirements of Title 17 of the Transportation Article. . . ."

It is clear that under the Transportation Article the moped ridden by Mrs. Gartelman is classified as a "bicycle," Transportation Article § 11-104, and that a bicycle is specifically excluded from the definition of a "motor vehicle," Transportation Article § 11-135. It is equally clear that a bicycle is not required to be registered by the State, Transportation Article § 13-402, and that its owner is not required to obtain or maintain "security meeting the requirements of Title 17 of the Transportation Article" as is the owner of a "motor vehicle," Transportation Article § 17-104. We also note that the exclusion contained in section 243H (a) (1) (i) of the Insurance Code (Art. 48A) was formerly contained in section 7-621 (2) of former Article 66 ½ that contained the Maryland Vehicle Law. The Maryland Vehicle Law is now contained in the Transportation Article. As already noted, the obvious purpose of the statutory exclusion is to induce compliance with Title 17 of the Transportation Article dealing with "required security", sometimes referred to as the compulsory insurance law. Title 17 requires "the *owner* of a *motor vehicle* [as defined in the Transportation Article] *that is required to be registered in this State"* to maintain the required security.

From all of the above, we think the legislative intent is clear that, as used in subtitle 16A of the Insurance Code (Art. 48A), "motor vehicle" has the same meaning it does in the Transportation Article. That meaning does not include the moped driven by Mrs. Gartelman at the time of the accident. For this reason, as well as the reason that she was not the owner of the vehicle she was driving, the statutory exclusion does not apply to deny her coverage. Since Penn National's endorsement, if applied, would deny coverage to Mrs. Gartelman, we hold that it is ineffective and void, as to apply it would result in less coverage to one in her situation than that required by law.

Penn National further argues that even though the

exclusionary provision of its endorsement may not be specifically allowed by statute, it should nevertheless be permitted. It is argued, in effect, that public policy should not permit the owner of two or more vehicles to pay for insurance on only one of them and allow the owner's spouse, as an "insured" under the insurance policy, to claim uninsured motorist coverage thereunder while driving any number of other uninsured vehicles also owned by him. A similar argument has been rejected by the majority of those jurisdictions that have held the policy exclusion void. We reject it here. *See* Widiss, *supra,* and *Lowery v. State Farm Mutual Automobile Insurance Co.,* 285 So. 2d 767 (1973), *rehr. denied* (Jan. 14, 1974), and cases cited therein.

The Maryland statute permits exclusion of only those "insureds" under an automobile liability insurance policy who are owner-operators or owner-passengers of uninsured motor vehicles. With these exceptions, the "primary purpose" of the statute is "to mitigate and ameliorate hardships caused by financially irresponsible and uninsured motorists where the claimants have no other source of compensation." *Unsatisfied C. & J. Fund v. Hamilton, supra.* If any other exception to this public policy is to be permitted, it must be done by the Legislature, not the courts.

Penn National also relies on the approval of both its PIP and UM endorsements by the Insurance Commissioner as a basis for upholding their validity. Notwithstanding such approval, if an endorsement, as in this case, clearly limits coverage required by a statute, the Commissioner's approval may be disregarded. *State Farm v. Maryland Automobile Insurance Fund,* 277 Md. 602, 605-606, 356 A.2d 560 (1976).

*Judgments affirmed; costs to be paid by appellant.*