# J. I. CASE CREDIT CORPORATION *v.* RUSSELL INSLEY ET UX.

[No. 80, September Term, 1981.]

*Decided May 28, 1982.*

*Motion for consideration filed June 14, 1982; denied June 25, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Richard M. Matthews* and *Emory E. Tamplin, Jr.,* for appellant.

*Kenneth J. MacFadyen,* with whom were *Friedman, Glorioso, Cohen & MacFadyen, P.A.* on the brief, for appellees.

RODOWSKY, J., delivered the opinion of the Court.

In this appeal we shall hold that a foreign corporation whose qualification to do intrastate business in Maryland was forfeited in 1972 for failure to file a personal property return, but whose activities thereafter are conceded not to have required qualification or registration in Maryland, is not barred from maintaining the instant suit by the door closing statute, Md. Code (1975), § 7-301 of the Corporations and Associations Article (CA).

Appellees and defendants below, Russell Insley and Lottie Mae Insley, his wife, are residents of Cambridge, Dorchester County, Maryland. On May 18, 1977, the Insleys purchased, under an installment sales agreement, four pieces of construction equipment from Carey Equipment, Inc. in Seaford, Delaware. Included were two Case bulldozers, Model 1450B, each at a cash price of $62,500. Carey Equipment, Inc. retained a security interest under the installment contract. There is no contention that this Delaware dealer was required to register or qualify in Maryland.

That contract was assigned by the seller to the appellant, J. I. Case Credit Corporation (Credit Co.), which accepted the assignment in New York. Financing statements were recorded in Maryland by Credit Co.

Alleging default by the Insleys, Credit Co. on February 23, 1979 instituted this replevin action in the District Court of Maryland in Dorchester County in order to seize the two bulldozers. After the show cause hearing required by Maryland District Rules BQ43 and BQ44, the writ was issued. Thereupon the Insleys filed an election for jury trial and the action was transferred to the Circuit Court for

Dorchester County. Based on § 7-301, the Insleys then moved to strike Credit Co.'s pleadings. At the conclusion of an evidentiary hearing, the circuit court held that Credit Co. was doing business in Maryland and dismissed the action. Credit Co. appealed. Prior to the consideration of the appeal by the Court of Special Appeals, Credit Co.'s petition for certiorari was granted.

Credit Co. is a Wisconsin corporation and is a wholly owned subsidiary of J. I. Case Co. (Case). Each company has its principal business office in Racine, Wisconsin. Case is an equipment manufacturer. Credit Co. is its "captive" sales finance company, in that Credit Co. finances only purchases by independent Case dealers from Case, and finances purchases or leases by retail customers from Case dealers or from Case owned and operated retail outlets. Credit Co. owns no real property or inventory in Maryland. It pays no taxes to Maryland. It maintains no office, employees, telephone listing or bank account in this State. It does not advertise.

Credit Co. has finance offices throughout North America. The office responsible for the 11 state area which includes Maryland is in Syracuse, New York. That finance office had been located in Baltimore but was moved to Syracuse in late 1969 when the Baltimore office was closed. During the period when Credit Co. maintained an office in Baltimore, the corporation qualified to do intrastate business in Maryland. After the move to Syracuse, Credit Co. ceased filing personal property tax returns with Maryland, and its authority to do business here was cancelled on May 8, 1972. Credit Co. has not thereafter registered or qualified in Maryland.

Credit Co. contends that, following the move of its regional office to Syracuse, it was not required to be registered under CA § 7-202, as doing interstate business in Maryland, or to be qualified under CA § 7-203, as doing intrastate business here. Appellees at oral argument before this Court conceded that, if Credit Co. had never previously been qualified in Maryland, it would "under these circum-

stances [have] a perfect right to come into this State and pursue whatever rights it [might] have against our residents." The "only point" appellees make to support the bar of § 7-301 is that Credit Co. lost its previous qualification for failure to file tax returns and not that Credit Co. has been required to be registered or qualified in Maryland based on activity here after the prior qualification was forfeited. Appellees expressly stated at argument that, without the prior qualification of Credit Co., appellees would "have no case." In light of this express concession, we are not required to review the evidence, which principally relates to the servicing of Maryland accounts by Credit Co. territorial credit representatives who enter this State from time to time.

The settled rule is that an appellate court will ordinarily affirm a trial court's judgment on any ground adequately shown by the record (and even though the ground was not relied on by the trial court). *Temoney v. State,* 290 Md. 251, 261, 429 A.2d 1018, 1023 (1981). This principle will apply if the appellee fails in his brief to raise the ground supporting the judgment, and even if the appellee fails to file any brief at all. *See, e.g., Union Trust Co. v. Tyndall,* 290 Md. 102, 428 A.2d 428 (1981). However, we have in at least one prior decision applied an exception to the ordinary rule. *Montgomery County Council v. Leizman,* 268 Md. 621, 303 A.2d 374 (1973) was the appeal of a judgment voiding the downzoning of appellees' property. The trial court based its judgment on three grounds, one of which was that the appellees had acquired vested rights. In this Court the appellees stated unequivocally that this ground was abondoned by them. We reversed, without undertaking a review of the vested rights aspect of the case. Where the appellee abandons a ground of support for the decision below by making an express concession in this Court, we need not, in our discretion, undertake a review of the matter conceded. We exercise that discretion here.[1]

---

1. Consequently no opinion is intimated as to whether Credit Co. was doing intrastate or interstate business in Maryland after the move to Syracuse.

Thus the issue, as limited by the concession, is whether the forfeiture of Credit Co.'s qualification, due to the nonfiling of tax reports, triggers the operation of the door closing statute and prevents Credit Co. from maintaining this action without meeting the conditions for lifting the bar of § 7-301.

That statute provides:

> § 7-301. Failure to register or qualify — Maintenance of suit.
>
> If a foreign corporation is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of Subtitle 2 of this title, neither the corporation nor any person claiming under it may maintain a suit in any court of this State unless it shows to the satisfaction of the court that:
>
> (1) The foreign corporation or the person claiming under it has paid the penalty specified in § 7-302 of this subtitle; and
>
> (2) Either:
>
> (i) The foreign corporation or a foreign corporation successor to it has complied with the requirements of Subtitle 2 of this title; or
>
> (ii) The foreign corporation and any foreign corporation successor to it are no longer doing intrastate, interstate, or foreign business in this State.

The penalty to which § 7-301 (1) refers is specified in CA § 7-302 (a) (1) which reads:

> (a) *Fine of corporation.* — (1) If a foreign corporation does any intrastate, interstate, or foreign business in this State without qualifying or registering as required by Subtitle 2 of this title, the Department shall impose a penalty of $200 on the corporation.

Section 7-301 applies if Credit Co. "has done any . . . business in this State without complying with the requirements

of Subtitle 2 . . . ." There is no general requirement *in Subtitle 2* that a foreign corporation file any reports in order to maintain its qualification. However, appellees point to CA § 7-208, in Subtitle 2, as being the "requirement" with which Credit Co. did not comply. Section 7-208 deals with the termination of registration or qualification. At the time Credit Co. moved its office to New York State the provision comparable to present § 7-208 was Md. Code (1957, 1966 Repl. Vol., 1969 Cum. Supp.), Art. 23, § 90 (h).[2] It read:

> (h) *Termination of registration or qualification.* — Any foreign corporation, registered or qualified in accordance with the provisions of this section, may terminate such registration or qualification by obtaining from the Department, upon payment of the fee required by law, a certificate of withdrawal. The Department, if satisfied that all reports required by law have been filed and all taxes due and payable by the corporation to the State and to any political subdivision thereof, to the date of filing the application for withdrawal have been paid, shall issue such a certificate upon the filing by the corporation of an application for withdrawal, signed in the name and on behalf of the corporation by its president or a vice-president, and containing the following information:
>
> (1) The name of the corporation, and the post-office address of its principal office.
>
> (2) The name and post-office address of the resident agent, service of process upon whom shall bind the corporation in any action in which it is subject to suit in this State.
>
> (3) A statement that the corporation, (i) in the case of termination of qualification, is no longer transacting any intrastate business in this State; or

---

2. At that time the door closing statute was Md. Code (1957, 1966 Repl. Vol., 1969 Cum. Supp.), Art. 23, § 91 (c) which was operative "if such foreign corporation is doing or has done . . . business in this State without having complied with the requirements of § 90 of this article . . . ."

(ii) in the case of termination of registration, is no longer transacting any interstate or foreign business in this State.

(4) A statement that the corporation wishes to terminate its registration or qualification to do such business.

(5) A statement that the corporation has filed all reports required by law and has paid all taxes due and payable by the corporation to the State and any political subdivision thereof, to the date of application for withdrawal. The application shall be accompanied by certificates of payment of taxes as required by this article in the case of filing of articles of dissolution.

For a number of reasons the filing of an application for, and the obtaining of, a certificate of termination are not "requirements" of Subtitle 2 of Title 7 of the Corporations and Associations Article, within the meaning of § 7-301. The requirements which § 7-301 addresses are those which are operative while the foreign corporation is currently doing business in Maryland or during the period when it had done intrastate business here. But, in order to apply for a certificate of termination of an existing qualification, the foreign corporation must state that it "no longer transacts any intrastate business in this State." CA § 7-208 (c) (3) (i), which superseded Md. Code (1957, 1966 Repl. Vol.), Art. 23, § 90 (h) (3) (i). Thus, the termination of qualification provisions deal with a time when the corporation's doing of intrastate business has ceased.

Were we to follow appellees' interpretation of §§ 7-208 and 7-301, it would mean that a foreign corporation which was qualified at all times while it was doing intrastate business, but which ceased doing intrastate business without obtaining a certificate of termination of qualification, would be barred from maintaining suit unless "it has paid the penalty specified in § 7-302 . . . ." *See* § 7-301 (1) and (2) (ii). Such an interpretation enlarges the scope of the penalty provision beyond its plain language. CA § 7-302 (a) (1)

authorizes the $200 penalty "[i]f a foreign corporation does . . . business in this State without qualifying or registering as required by Subtitle 2 . . . ." Parallel construction would indicate that the words "without complying with the requirements of Subtitle 2," as found in § 7-301, should be read the same as "without qualifying or registering as required by Subtitle 2" as found in § 7-302 (a) (1). The more limited reading is also dictated by the fact that a civil penalty is involved. *See Fisher v. Bethesda Discount Corp.,* 221 Md. 271, 275, 157 A.2d 265, 268 (1960).

If obtaining a certificate of termination were, as appellees contend, a requirement of Subtitle 2 under § 7-301, then a rather peculiar result would arise in the application of § 7-301 where a previously qualified or registered foreign corporation simply ceases doing any business here. To obtain relief from the bar of § 7-301 the foreign corporation would have to pay the $200 penalty, and satisfy one or the other of two additional conditions. It might (i) comply "with the requirements of Subtitle 2" or (ii) no longer be doing business in this State. The purpose of the conditions for lifting the bar of § 7-301 seems to be twofold, *i.e.,* both to punish the past violation and to rectify it. But in the case of a foreign corporation which ceases doing business here without obtaining a certificate of termination and thereby, *arguendo,* violates § 7-208, the bar of § 7-301 could be lifted by paying the penalty but without rectifying the violation. Under this hypothesis, the foreign corporation would not need to file the reports and tax payment certificates which would have accompanied an application for a certificate of termination. Because the corporation would no longer be doing business here, it would meet the alternative found in § 7-301 (2) (ii). On the other hand, if "requirements" as used in § 7-301 does not include obtaining a certificate of termination, "requirements" would still include registering or qualifying. Read in this manner, the alternatives of § 7-301 (2) form a consistent whole. If the foreign corporation is presently doing business without having registered or qualified, it does not meet alternative (ii) and must register or qualify, as appropriate, and pay the penalty. If

the foreign corporation has done business in this State without being registered or qualified, and is no longer doing business in this State, it need not register or qualify for the future, but it must still pay the $200 penalty. In that instance, the $200 penalty is imposed for having done business in the past without having been registered or qualified while doing that business.

This analysis highlights appellees' position. It is that the previously qualified foreign corporation which ceased doing business here without obtaining a certificate of termination, and which has not thereafter done any business here, must be punished for the assumed violation of § 7-208 by the $200 penalty. We reject that interpretation because it imposes the penalty when no business has been done in this State without being registered or qualified, contrary to § 7-302 (a) (1).

Further, there are at least two ways in which a foreign corporation's qualification may be brought to an end. One method is to obtain a certificate of termination. Another method is by forfeiture. Under CA § 7-304 the "[State] Department [of Assessments and Taxation] may forfeit the right of any foreign corporation to do intrastate business in this State if the corporation fails to file with the Department any report required by law ...." [3] The prior provision was

---

3. CA § 7-304 provides in full as follows:

(a) *Forfeiture of right to do intrastate business.* — The Department may forfeit the right of any foreign corporation to do intrastate business in this State if the corporation fails to file with the Department any report required by law:

(1) Within the time required by law; and

(2) Thereafter, within 30 days after the Department makes a written demand for the delinquent report.

(b) *Effective date of forfeiture.* — Unless the Department excuses a reasonable delay for good cause shown, the forfeiture is effective 15 days after written notice of forfeiture from the Department, without proceedings of any kind either at law or in equity.

(c) *Demand and notice.* — The demand for a delinquent report and the notice of forfeiture shall be addressed to the corporation:

(1) At its address on file with the Department; or

(2) If it has no address on file with the Department, in care of the Secretary of State or corresponding official of the place where it was organized or is existing, if known to the Department.

Code (1957, 1969 Repl. Vol.), Art. 81, "Revenue and Taxes," § 253. A foreign corporation which ceases doing intrastate business here, and which is no longer required to maintain its qualification, may voluntarily suffer forfeiture of its qualification by ceasing to file reports which it had been required to file while doing intrastate business in this State. CA § 7-203 (c) (2) recognizes as much by providing that "[u]nless terminated by the corporation" qualification is effective as long as, *inter alia,* "the corporation does not forfeit its right to do intrastate business under the laws of this State." Accordingly § 7-208, as did its statutory predecessor, states that a foreign corporation "may terminate" registration or qualification by application for a certificate of termination. This is to be contrasted with the "shall register" language of § 7-202 and the "shall qualify" language of § 7-203. The "may" of § 7-208 means that it is optional with the foreign corporation that withdraws from Maryland whether to apply for a termination certificate. Because obtaining such a certificate is not mandatory, it is not a "requirement" of Subtitle 2 within the meaning of § 7-301.

Nor does our construction of §§ 7-208 and 7-301 do violence to the statutory scheme for the collection of taxes possibly owed by a withdrawing foreign corporation. The sanction for the failure of a foreign corporation to file reports is found in § 7-304. That sanction is forfeiture, but not forfeiture *and* inability to use the State's courts. As part of Subtitle 3, § 7-304 is not incorporated into § 7-301.

We do not find in *Gibraltar Construction & Engineering, Inc. v. State National Bank of Bethesda,* 265 Md. 530, 290 A.2d 789 (1972), the support for their position which appellees seem to find. Gibraltar Construction & Engineering, Inc. (Gibraltar) had been incorporated on March 2, 1966 under the laws of the District of Columbia. It qualified to do intrastate business in Maryland on July 14, 1966 and thereafter actively engaged in the contracting business here.

---

(d) *Effect of forfeiture.* — On forfeiture of its right to do intrastate business in this State, the foreign corporation is subject to the same rules, legal provisions, and sanctions as if it had never qualified or been licensed to do business in this State.

In February and March of 1967 nine suits were filed against it in the Circuit Court for Montgomery County, to which Gibraltar asserted counterclaims. Gibraltar's qualification was forfeited on December 20, 1967 for failure to file its personal property return. The litigation proceeded to judgments against Gibraltar which noted appeals to this Court on December 10, 1970. A motion was filed in this Court to dismiss Gibraltar's appeals and was granted. We said that "[t]here is no evidence in the record to indicate when Gibraltar ceased to do business in Maryland, and it will be presumed that it continued to do business in this State until the contrary is shown." *Id.* at 535, 290 A.2d at 792.[4] In the case at bar, both parties produced testimony and exhibits concerning the activities of Credit Co. in the period following relocation of its regional sales finance office from Baltimore to Syracuse up to the time of hearing. Those activities, by appellees' concession, are not "doing business." Thus, this case does not present an occasion for the application of the type of presumption applied in the evidentiary void which existed on the record in *Gibraltar.* That case does not stand for the proposition that the door closing statute is applied to a foreign corporation whose qualification to do intrastate business has been forfeited, but which has not thereafter done business in this State.

> *Judgment of the Circuit Court for Dorchester County reversed and case remanded for further proceedings.*
>
> *Costs to be paid by the appellees.*

---

4. This Court has stated that "[t]he party asserting that an unregistered or unqualified foreign corporation is 'doing business within the state' carries the burden of proof." S.A.S. Personnel Consultants, Inc. v. Pat-Pan, Inc., 286 Md. 335, 339, 407 A.2d 1139, 1141 (1979). *See* Rudden v. Gro-Plant Indus., Inc., 269 Md. 173, 176, 304 A.2d 812, 814 (1973); Katz v. Simcha Co., 251 Md. 227, 238, 246 A.2d 555, 562 (1968). And *see* United Merchants and Mfrs., Inc. v. David & Dash, Inc., 439 F. Supp. 1078, 1087 (D. Md. 1977); Premier Indus. Corp. v. Nechamkin, 403 F. Supp. 180, 181 (D. Md. 1975). In the instant matter we need not resolve whether there is any conflict between the foregoing cases and the above-quoted statement in *Gibraltar,* or whether *Gibraltar* states a special evidentiary rule for corporations which had once been qualified.