DIRECTOR OF FINANCE OF PRINCE GEORGE'S
COUNTY, MARYLAND ET AL. V.
RICHARD D. COLE ET AL.

[No. 107, September Term, 1981.]

\* \* \* \* \* \*

DIRECTOR OF FINANCE OF PRINCE GEORGE'S
COUNTY, MARYLAND ET AL. V.
LEONARD HAROLD GOLDBERG

[No. 108, September Term, 1981.]

*Decided September 2, 1983.*

608

*Motion for reconsideration filed on October 3, 1983; denied on October 5, 1983.*

The causes were argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Robert B. Ostrom, County Attorney* and *Steven M. Gilbert, Associate County Attorney,* with whom was *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellants.

*Alan J. Goldstein* with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* on the brief, for appellees.

COLE, J., delivered the opinion of the Court. ELDRIDGE and DAVIDSON, JJ., concurred in Case No. 108 and dissented in Case No. 107. ELDRIDGE, J., filed a dissenting and concurring opinion at page 637 *infra,* in which DAVIDSON, J., concurs.

We consolidated for purposes of this appeal the two cases of *Director of Finance of Prince George's County, Maryland, et al. v. Richard D. Cole, et al.* and *Director of Finance of Prince George's County, Maryland, et al. v. Leonard H. Goldberg.* In both cases we are asked to render an interpretation and construction of Maryland Code (1957, 1982 Repl. Vol.), Article 27, § 264. There are certain procedural obstacles precluding the Court from complying with this request in *Goldberg.* However, in *Cole* we shall address the issue of whether a trial court, as part of its criminal proceedings, can order the return of money seized pursuant to an arrest for gambling violations covered by Article 27, § 264.

## THE GOLDBERG CASE

In the afternoon of December 7, 1979, Leonard H. Goldberg was arrested at a Contee Road address in Laurel, Maryland, while allegedly taking sports bets over the telephone. The arrest was made pursuant to a search and seizure warrant and $501.00 was seized from Goldberg's person at the time of his arrest. At about the same time the search was being conducted on Contee Road, other officers were executing a search and seizure warrant at Goldberg's home where records of gambling and $3,562.00 in cash were seized.

On May 7, 1980, Goldberg was brought to trial in the District Court of Prince George's County. He pleaded guilty to a gambling violation and received a $1,000 fine and probation before judgment under Maryland Code (1957, 1978 Repl. Vol., 1980 Cum. Supp.), Article 27, § 641. Subsequent to that determination, on August 20, 1980, the County Attorney for Prince George's County informed Goldberg, that pursuant to Article 27, § 264 (d), he must make application to the county to be reimbursed for the money seized as a result of his arrest. On August 26, Goldberg's attorney wrote to the county requesting the return of the money plus interest. On September 5, 1980, the County Attorney denied the request.

Thereafter, Goldberg filed a motion for the return of his money in the District Court in which his criminal case had been heard. No notice was given to the Prince George's County Attorney nor to the Director of Finance of Prince George's County, William R. Brown, Jr., who was the local official who had custody of the money seized. On October 8, 1980, a hearing was held in the District Court at which neither the Prince George's County Attorney nor Mr. Brown was present. The result of the hearing was a determination that Goldberg was entitled to recover the money seized; therefore, the District Court judge ordered Brown to return to Goldberg the $4,063.00 held by the county. No appeal was taken from this order.

On November 21, 1980, the District Court order, requiring the Director of Finance to return the money seized from Goldberg, was served on Brown, and on January 27, 1981, Goldberg filed a rule to show cause against Brown in the same criminal case. On February 3, 1981, Brown answered the rule to show cause and Brown and the county filed a motion to revise the order of October 8 under M.D.R. 625. However, Prince George's County and the Director of Finance filed no motion to intervene in this case. On April 3, 1981, the District Court heard the criminal case. At this proceeding, Goldberg argued that, because the county was not a party to the criminal case, the county and its Director of Finance had no standing to file the motion to revise. Goldberg also argued that the October 8 order had not been appealed and thus had become final. In addition, the State's Attorney opposed the presence of the County Attorney, saying that the representation by the State at the October 8 proceeding adequately protected the county's interests. The trial judge orally held the Director of Finance, Brown, in contempt of court for failing to pay Goldberg the money seized, although mentioning no sanction or prescribing a means by which Brown could purge himself of the contempt. The trial court further held that Prince George's County had no standing in the case because it was not a party to the criminal cause.

The clerk of the District Court noted on the docket as of April 2, 1981, that "Motion to revise judgment denied and Mr. Brown held in contempt per Judge DiTrani." However, the District Court judge did not sign a formal order of contempt until April 3, 1981.

On April 2, 1981, Prince George's County and Brown appealed from the District Court denial of the motion to revise and Brown appealed from the order holding him in contempt to the Circuit Court for Prince George's County. In September, 1981, the circuit court affirmed the District Court order and directed that the money involved be paid to Goldberg. The Director of Finance of Prince George's County and Prince George's County filed a petition for certiorari which we granted.

That petition presented the following issue:

> In a Criminal Gambling Case Where Money Was Seized, Was the Trial Court Authorized To Order the Payment of That Money to the Criminal Defendant, Who Pleaded Guilty and Received Probation Prior to Judgment, Without (a) Notice to the Seizing Jurisdiction, or (b) Trial of the Issue Whether the Money Was Contraband?

However, having closely examined the course this action has taken in the District Court, we now conclude that certain jurisdictional and procedural principles preclude us from addressing this issue.

Two separate appeals were presented in the *Goldberg* case — one from the contempt order and one from the denial of the motion to revise. However, both of these appeals should have been dismissed by the circuit court.

An appeal from the contempt "order" is improper because the appeal was noted on April 2, 1981 — before there was a completed written contempt order. The trial judge's oral ruling and the docket entry evidencing the same do not constitute a contempt order from which an appeal may properly be taken. At that time, the court noted no sanction or purging provision, both essential elements of a valid con-

tempt order. *See Elzey v. Elzey,* 291 Md. 369, 374, 435 A.2d 445 (1981); *see generally State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867 (1973). Thus, Brown could not appeal from the contempt order as of April 2, 1981.

The only appealable contempt order was signed by the trial judge on April 3, 1981. This order did contain a sanction and proper purging provision. However, the only order of appeal was filed on April 2, 1981. Because the appeal was premature, being filed before the final judgment, the appeal must be dismissed. *See Merlands Club v. Messall,* 238 Md. 359, 208 A.2d 687 (1965); *Md., Del. & Va. Rwy. Co. v. Johnson,* 129 Md. 412, 99 A. 600 (1916).

There also has been no proper appeal taken from the original judgment entered in the criminal case on October 8, 1980. The county and its Director of Finance did attempt to appeal from the trial court's refusal to revise this order; however, this motion to revise was never properly before the District Court. Neither the county nor Mr. Brown could petition the court to revise its order because they were never parties in the criminal case. At no time did either file a motion to intervene in the case even though the proper role of the county in the proceeding was argued at the April 2nd hearing. Because the county and Mr. Brown are not now, and never have been, parties to this case, they were not entitled to file a motion to revise under M.D.R. 625.[1] Consequently, they could not appeal from the denial of the motion. Therefore, we must vacate the order of the circuit court and remand the case to that court with instructions to dismiss the appeals.

## THE COLE CASE

Richard D. Cole and several other persons were arrested on gambling charges in College Park, Maryland on October 31, 1977. At the time of the arrest, which was conducted by

---

1. Significantly, M.D.R. 625 applies only to civil proceedings and no civil proceeding was ever instituted by Mr. Brown or the county to forfeit the money involved.

Prince George's County Police acting pursuant to search warrants, evidence of gambling and a sum of $15,500.00 were seized. Subsequently, criminal charges were filed against Cole in a one-count charging document in the District Court for Prince George's County. Cole prayed a jury trial and the case was transferred to the Circuit Court for Prince George's County. In the circuit court the State filed a motion to amend the charging document under which Cole was charged. The motion was denied. The State thereupon brought a seven-count criminal information against Cole in the District Court for Prince George's County. Thereafter, the State moved to voluntarily dismiss its charges in the circuit court and the motion was granted. In the District Court Cole filed a motion to suppress the evidence seized. The motion was granted and the State subsequently *nol prossed* its charges in January, 1980.

On March 21, 1980, within ninety days of the State's entry of *nol pros* in the District Court, Prince George's County filed a petition in the Circuit Court for Prince George's County to forfeit the monies seized from Cole purportedly in conformance with Article 27, § 264. Cole demurred to the petition and requested the circuit court to return to him the money seized. The circuit court sustained the demurrer and ordered the county to pay the money to Cole. This order requiring payment was entered without hearing testimony, receiving evidence, or making findings of fact. It was based on the fact that Cole was not convicted in the criminal proceeding. The county appealed to the Court of Special Appeals, which held that Article 27, § 264 did not authorize the county to petition for forfeiture, because there had been no conviction, and further held that the circuit court erred in ordering the return of the money. *Director of Fin., Pr. Geo's Co. v. Cole,* 48 Md. App. 633, 428 A.2d 1227 (1981).

While the appeal was pending in the Court of Special Appeals, Cole filed a motion for appropriate relief with the Circuit Court for Prince George's County on May 6, 1980 (in the one-count criminal appeal which had been voluntarily dismissed by the State in 1979), contending that the *nol pros*

entered entitled that court to order the return of his money. Prince George's County sought and obtained intervention in the circuit court proceedings on June 6, 1980. The circuit court held a hearing on Cole's motion and decided to postpone its decision pending results of the appeal in the Court of Special Appeals.

On June 23, 1981, after the result of the appeal in the Court of Special Appeals had been obtained, the Circuit Court for Prince George's County ordered Prince George's County to return the money it had seized from Cole in the case *nol prossed* in that court. Prince George's County filed a motion for reconsideration that was heard on August 4, 1981, and was denied. We granted certiorari in the case prior to its consideration by the Court of Special Appeals.

We shall examine the issue as framed by the petitioner:

In a Criminal Gambling Case Where Money was Seized, Charges Were Terminated By Voluntary Dismissal by the State; New Charges Were Brought; and Charges in the Second Criminal Case Were Ultimately Terminated by Nolle Prosequi. Under These Circumstances, Was The Trial Court in the First Criminal Case Authorized to Order Payment of the Seized Money to the Criminal Defendant Without Trying the Issue Whether the Money was Contraband?

Analyzing this issue requires an extensive interpretation and construction of the provisions of Maryland Code (1957, 1982 Repl. Vol.), Article 27, § 264, relating to the forfeiture and disposition of money seized in arrests for gambling violations. Before beginning our discussion of the statute, however, a digression into the history and nature of forfeiture provisions in general will afford us a background against which to analyze the specific forfeiture provisions of Article 27, § 264 and an opportunity to discern the legislative intent in enacting the statute.

The concept of forfeiture began as a feature of the common law of England. Prior to the American Revolution, the

common law required forfeiture on two occasions; any inanimate object causing someone's death was forfeited to the Crown as a "deodand" and a conviction for felony or treason caused the forfeiture of the lands and goods of the one convicted. Neither of these two customs was ever integrated into the American common law but their effects remain with us today. For that reason, a short discussion of each is in order.

Deodand is derived from the Latin *Deo dandum,* a thing to be given to God. Black's Law Dictionary 392 (5th ed. 1979). Supposedly having its origins in the Mosaic Law,[2] any personal chattel whether animate or inanimate, which was the immediate cause of death of one of the King's subjects, was forfeited to the King for sale and distribution of the proceeds to the poor by the high almoner to appease God's wrath. At the base of the doctrine was the implication that the instrumentality of death was affected from having caused the death. "So far was this the case that Blackstone says that the forfeiture applied, even though the offending [instrument] belonged to the person killed. 1 Blacks. Com., 301; Holmes, Common Law, 24; 2 Pollock & Mait., History of English Law (2d Ed.), 473." *Parker-Harris Co. v. Tate,* 135 Tenn. 509, 514, 188 S.W. 54, 55 (1916).

As times changed so did the practice of the deodand. The proceeds of the forfeiture ceased to be applied to religious or eleemosynary purposes and the deodand became a source of Crown revenue, being justified as a penalty for carelessness. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 681, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). It was eventually abolished in 1846, with the passage of Lord Campbell's Act, which created a cause of action for wrongful death. *Id.* at 681 n. 19.

The second type of forfeiture at English common law was the forfeiture of goods and chattels and the escheat of lands

---

2. *See* Exodus 21:28: "If an ox gore a man or a woman, and they die, he shall be stoned and his flesh shall not be eaten, but the owner of the ox shall be quit." (King James) (*quoted in* Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 681 n. 17, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974)).

upon conviction for felony or treason. *See The Palymyra,* 25 U.S. (12 Wheat.) 1, 14, 6 L.Ed. 531 (1827); *Calero-Toledo v. Pearson Yacht Leasing Co., supra.* "The basis for these forfeitures was that a breach of the criminal law was an offense to the King's peace, which was felt to justify denial of the right to own property." *Id.* at 682.

These common law forfeitures were never practiced in this country. *Farley v. $168,400.97,* 55 N.J. 31, 259 A.2d 201, 204 (1969). However, the act of forfeiture and the practice of seizing goods was carried on pursuant to statute. *See C. J. Hendry Co. v. Moore,* 318 U.S. 133, 63 S.Ct. 499, 87 L. Ed. 663 (1943). At an early stage in enforcing these statutes, Chief Justice Marshall noted a distinction between common law and statutory forfeitures. In *United States v. Grundy and Thornburgh,* 7 U.S. (3 Cranch) 337, 2 L.Ed. 459 (1806), he observed that at common law no rights in the thing seized vested in the government until some legal step was taken for the assertion of the government's interest. A forfeiture conducted pursuant to statute, however, dispensed with the common law rules and the government's rights in the thing forfeited vested immediately or on the performance of some particular act, whichever was the will of the Legislature. *Id.* at 350-51. *See also United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890); *Origet v. United States,* 125 U.S. 240, 8 S.Ct. 846, 31 L.Ed. 743 (1888); *Henderson's Distilled Spirits,* 81 U.S. (14 Wall.) 44, 20 L.Ed. 815 (1872); *United States v. 1960 Bags of Coffee,* 12 U.S. (8 Cranch) 398, 3 L.Ed. 602 (1814).

Despite the distinction between common law and statutory forfeitures as to when rights in the goods vest, the rationale of the common law, *i.e.,* that the forfeiture was against the offending article and a penalty for carelessness, continued. *See Pr. George's Co. v. Blue Bird Cab,* 263 Md. 655, 284 A.2d 203 (1971); *State v. Thirty-Six (36) Pinball Machines,* 222 Kan. 416, 565 P.2d 236 (1977). This is demonstrated by the *in rem* character of forfeiture proceedings and the development of the rule that the innocence of the owner of the property is no defense. *State v. Greer,* 263 Md. 692,

284 A.2d 233 (1971). In the same vein it has been held that the property is treated as the offender, *Pr. George's Co. v. Blue Bird Cab, supra; State v. Thirty-Six (36) Pinball Machines, supra;* that the forfeiture itself is not considered part of the punishment for the offense, *Origet v. United States, supra;* that as a civil *in rem* proceeding the forfeiture is in no way dependent upon a criminal proceeding, *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); *People v. Kapande,* 23 Ill.2d 230, 177 N.E.2d 825 (1961); *State v. Rumfolo,* 545 S.W.2d 752 (Tex. 1976); and that indeed, the forfeiture is a civil proceeding completely separate and apart from the criminal proceeding. *See One Lot Emerald Cut Stones and One Ring v. United States, supra; Pr. George's Co. v. Blue Bird Cab, supra.* The result of the civil proceedings either perfects the government's interest in the goods, *Caldwell v. United States,* 49 U.S. (8 How.) 366, 12 L.Ed. 1115 (1850); *United States v. Stowell, supra,* or results in a determination that they are not contraband and should be returned.

The items proceeded against in a forfeiture proceeding are characterized, at least for our purposes, as contraband. In this regard, there are two types of contraband: contraband *per se* (property which is inherently illegal to possess) and derivative contraband (property which is legal to possess except for the circumstances, which make it illegal). *See* Comment, *Forfeiture Seizures and the Warrant Requirement,* 48 U. Chi. L. Rev. 960, 962 n. 17 (1981). Contraband *per se,* of course, requires no proceeding for forfeiture. Derivative contraband, on the other hand, does require some kind of showing that the property was used illegally. *See State v. Rumfolo, supra.*

The leading Maryland cases on forfeiture are *State v. Greer, supra; Pr. George's Co. v. Blue Bird Cab, supra;* and *Gatewood v. State,* 264 Md. 301, 285 A.2d 623 (1972). These cases provide some foundation for the decision in this case so we shall pause to discuss their facts and rationale to better understand the instant proceedings.

In *State v. Greer, supra,* the State appealed a circuit court decision that returned to the owner possession of a car that had been seized by Montgomery County Police as the result of narcotics violations pursuant to Article 27, § 297.[3] The owner of the car had not been connected with the illegal activity in any way. The circuit court's order was issued without notifying the State or Montgomery County of the proceeding.

This Court reversed the decision of the circuit court based on three principles. First, the Court determined that forfeiture, unless specified otherwise, is a civil *in rem* proceeding. It was of little significance, therefore, that the owner of the car was not culpable for the criminal behavior that justified the forfeiture. *Id.* at 694. Second, the applicable statute, Article 27, § 297 (c), provided that custody of the seized vehicle is in the person who seized the property. Therefore, the seizing jurisdiction was a necessary party to the action. *Id.* at 694. Lastly, the Court held that because neither the State, the seizing jurisdiction, nor any other interested party received notice of the proceeding, such proceeding violated due process. *Id.* at 695.

---

**3.** Maryland Code (1957, 1982 Repl. Vol.), Article 27, § 297 (a) (4) provides that:

(a) *Property subject to forfeiture.* — The following shall be subject to forfeiture and no property right shall exist in them:

\* \* \*

(4) All conveyances including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in (1) or (2), except that,

(i) No conveyance used by any person as a common carrier or vehicle for hire in the transaction of business as a common carrier or vehicle for hire shall be seized or forfeited under this subheading unless it appears that the owner or other person in charge of the conveyance was a consenting party or privy to a violation of this subheading; and

(ii) No conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any state.

In *Pr. George's Co. v. Blue Bird Cab, supra,* a cab belonging to the Blue Bird Cab Company, Inc. was seized by Prince George's County Police pursuant to Article 27, § 297 as having been used by a cab driver as a vehicle from which to distribute heroin. The cab company complained that an express provision contained in Article 27, § 297 applied to it and forbade forfeiture. In rejecting the cab company's contentions, we set the tone for future forfeiture cases. This Court noted that forfeiture is a civil *in rem* proceeding, "grounded in the legal fiction that an inanimate object can be guilty of a crime," *id.* at 658 (citations omitted), that the burden of proof necessary to sustain the forfeiture is a mere preponderance of the evidence and not proof beyond a reasonable doubt, and that the innocence of the owner is of no consequence. *Id.* at 659-62.

Perhaps the most significant Maryland case as far as our decision here is concerned is *Gatewood v. State, supra.* Gatewood pleaded guilty to a violation of the lottery laws. At the time of his arrest police had seized $6,182.00 from Gatewood's pocket. After being convicted, Gatewood applied to the court that heard the criminal case for the return of the money seized. He was initially successful. However, the court had a change of heart and he was required to pay the money back. Gatewood appealed. This Court held that the forfeiture proceeding mandated by Article 27, § 264 was a civil proceeding, and therefore, Gatewood's application to the Criminal Court of Baltimore, which did not have civil jurisdiction, was a nullity. *Id.* at 304-05.

With this background we turn to discuss the forfeiture statute at issue. Article 27, § 264 was first enacted in 1951 as Article 27, § 307A, an adjunct to Article 27, § 307. 1951 Md. Laws, Ch. 299. Its purpose, stated in the preamble, was to provide a mechanism for "the confiscation in certain counties of money, currency or cash seized or captured in connection with any arrest for illegal gambling or operation of any lottery." Section 307A (a) required that all money seized

in connection with any arrest for the playing or operation of any lottery, game, table, or gaming device . . . shall be deemed *prima facie* to be contraband of law as a gambling device or as part of a gambling operation. No such money, currency or cash shall be returned to any person claiming the same, or to any other person, except in the manner hereinafter in this section provided.

Section 307A (b) directed that the money be "deposited with, and accounted for by the County Treasurer of the County," pending trial or ultimate disposition of the charges.

Once there had been a final determination on the criminal charges, § 307A (c) and (d) swung into effect. Section 307A (c) pertained to records of conviction and stated that in such cases the County Treasurer

may after one month from the date of the record of the entry of such conviction . . . make application to the Circuit Court of the County, for an order declaring and ordering that such money, currency or cash in the custody of the County Treasurer shall be forfeited to the sole use and gain of the said county.

The statute further required the circuit court to determine whether there was any other claimant to the money. In cases where the result of the criminal proceeding was an "acquittal or other final determination of such proceedings in favor of the person or persons so arrested" the money was to be "returned to the person from whom taken on the expiration of ninety days from such acquittal or other final determination," unless someone else asserted a claim to the money, in which case the court was to adjudicate that claim.

From 1951 to 1974 the act was amended several times. However, the changes, with one exception, merely renumbered § 307A as § 264 and added jurisdictions to the list of those covered by the act. In 1967 the list of offenses covered was expanded and "bookmaking, betting and wagering on horses or athletic events" were included among

the group of gambling violations to which the act applied.

In 1974 the Legislature made sweeping changes, several of which are significant in the instant circumstances. The purpose of the 1974 amendments, as stated in the preamble to the legislation, was to set "forth rights and procedures respecting *money and other property* seized in connection with gambling and controlled dangerous substances laws." 1974 Md. Laws, Ch. 666 (emphasis supplied).

The 1974 legislation also cleared up any doubt there may have been as to when title to seized money vested in the government. Following the provision contained in § 264 (a), that the seized money is *prima facie* contraband, the Legislature further added that "[a]ll rights, title and interest in and to such money, currency or cash shall *immediately* vest in and to the local governments of the city and counties. . . ." [Emphasis supplied.] Because it is within the power of the legislature to determine when the transfer of rights to seized goods takes place, *United States v. 1960 Bags of Coffee, supra,* the Maryland Legislature has fixed the point at the moment the seizure occurs. At this time the money is *prima facie* contraband and belongs to the jurisdiction whose authorities consummate the seizure.

The Legislature also made alterations to § 264 (c) concerning disposition of the money where the criminal proceeding resulted in a record of conviction. Up to this time, the statute provided that the County Treasurer or Director of Finance "may, after one month" from the date of the entry of conviction, apply for forfeiture. Chapter 666 of the Laws of Maryland of 1974 changed this to read that he "shall within ninety days" make the application. Thus, the Legislature made what had been a permissive application mandatory and set a statutory time limit within which the County Treasurer or Director of Finance must apply for forfeiture, thereby dispelling any doubt as to who had interest in the money at what time. *Cf. United States v. Baltimore,* 564 F.2d 1066 (4th Cir. 1977) (the permissive features of the pre-1974 enactment were heavily relied upon by the Fourth Circuit Court of Appeals to opine that until a judicial order

of forfeiture was made the money was still the property of those from whom it was seized).

The 1974 Legislature also modified subsection (d) of § 264, relating to disposition of the money in the event of acquittal or other final determination in favor of the person arrested. The language pertaining to "other final disposition" was struck and replaced with "dismissal." This restricted and defined the pertinent dispositions, making subsection (d) applicable to acquittals and dismissals only, and eliminating other arguably favorable dispositions such as stet, *nolle prosequi,* and probation before judgment.

Not satisfied with the major modifications wrought in 1974, the Legislature again revised the statute in 1977. *See* 1977 Md. Laws, Ch. 720.[4] It hardly needs mentioning that "in Maryland there usually is little prepassage evidence of intent." *Unsatisfied Claim and Judgment Fund v. Hamilton,* 256 Md. 56, 57, 259 A.2d 303 (1969). However, with this particular bill we are provided with a note contained in the files of the Senate Judicial Proceedings Committee, author unknown, to the effect that "most forfeitures involve less than $100 and at present there are over 5,000 forfeiture cases backed up in Baltimore City because of problems with the present law." The modifications contained in the 1977 enactment, therefore, were intended to streamline and clarify the procedure for forfeitures in order to alleviate the overburdening experienced by the court system.

The first relevant change made by Chapter 720 was in § 264 (a). The Legislature added to, and in so doing clarified, the provision vesting title immediately in the local government to include the provision that if the money was seized by State authorities, such title would vest in the State.

Subsection (d) was completely rewritten. The ultimate dispositions that were favorable to the accused and to which the subsection applied were expanded from acquittal and

---

4. Chapter 418 of the 1977 Laws of Maryland also amended Article 27, § 264. However, that amendment concerned only the investment of money after seizure and is not relevant to our analysis in the instant case.

dismissal to include stet and *nolle prosequi*. Further, the previous statute had provided, since 1951, that within ninety days from the date of the favorable disposition the money was to be returned to the accused unless another party had asserted a claim to the money. The new language was that

> any person claiming that all or any of the seized money ... is not contraband of law under (a) and should be returned to the claimant, within one year after the date the judgment or order was entered or the action was taken which constituted the ultimate disposition, may make application on giving ten days' prior written notice to the State Treasurer, Custodian County Treasurer or Director of Finance, to the appropriate court for a determination that the money ... is the property of the claimant and for an order that it be returned. [1977 Md. Laws, Ch. 720, § 264 (d) (1).]

The Legislature thereby removed the burden of evaluating conflicting claims, as in the case where two persons arrested at the same time both claimed an interest in the money, from the local government authority who had possession of it and provided that a judicial determination must be made in *all* cases regardless of the outcome.

To assist the court in the determinations to be made regarding conflicting interests in seized money, the Legislature enacted a series of statutory presumptions in subsection (d) (2). An acquittal, dismissal, or *nolle prosequi* constituted *prima facie* evidence that the money was not contraband. A conviction, a plea of guilty or *nolo contendere,* and a probation before judgment were *prima facie* evidence that the money was contraband. The entry of stet gave rise to no presumptions either way.

To finalize the proceedings, subsection (d) (3) provided that where the claimant either failed to file a timely petition or received a judicial decision that the money was contraband, the seized money was forfeited to the custodian without

further judicial action. Subsection (d) (4) required that timely notice must be given to any known claimants.

Subsection (e) of this legislation provides one leg of the appellees' claims in this case. After defining "ultimate disposition" and "record of conviction," (e) (4) provided that "[t]his section does not prohibit the trial judge after an acquittal or dismissal from ordering immediate return of all property seized." This provision continues unchanged in the present Article 27, § 264 (e) (4) and its scope and meaning will be discussed later.

In 1979, the Legislature again responded to a problem in the law being experienced by Baltimore City.[5] Carl

_____

5. The 1979 enactment is the law in Maryland today. In pertinent part § 264 provides:

(a) *Deemed contraband.* — Whenever any money, currency, or cash is seized or captured by any police officer in this State in connection with any arrest for the playing or operation of any bookmaking, betting and wagering on horses or athletic events, or any lottery, game, table, or gaming device unlawful under the provisions of this article, all such money, currency, or cash shall be deemed prima facie to be contraband of law as a gambling device or as a part of a gambling operation. All rights, title, and interest in and to such money, currency, or cash seized by the police of the local government shall immediately vest in and to the local governments of the county, municipality, or Baltimore City, or if seized by State authorities, to the State, and no such money, currency, or cash shall be returned to any person claiming the same, or to any other person, except as provided in this section. The Baltimore City police department is not a State authority for purposes of this section.

(b) *Deposited pending trial.* — Pending trial or ultimate disposition of the charge or charges, indictment or indictments, growing out of any arrest in connection with which any such money, currency or cash may have been so seized or captured, the same shall be deposited in an interest-bearing bank account or invested in accordance with Article 95 and accounted for by the county treasurer of the county or the director of finance in Baltimore City.

(c) *Forfeiture upon conviction.* — If the trial or other ultimate disposition of such charge or charges, indictment or indictments, results in a record of conviction being entered against the person or persons so arrested, in connection with which the money, currency, or cash may have been so seized or captured, the State Treasurer, the county treasurer of the county or director of finance in Baltimore City, shall within 90 days from the date of the record of the entry of such conviction, unless the case is appealed to an appellate court, make application to the District Court or circuit court of the county or to the District Court of Baltimore City or a law court of the Supreme Bench of Baltimore City, for an order declaring and ordering that such money, currency, or cash in the

Berenholtz, Assistant City Solicitor for Baltimore City, testified at a hearing before the Senate Judicial Proceedings Committee, informing that body that

custody of the State Treasurer, director of finance or county treasurer shall be forfeited to the sole use and gain of the State, county or city. The court to which any such application has been directed shall establish to its satisfaction that there is no pending and undetermined suit or proceeding which has been filed in any court of competent jurisdiction, against the director of finance or treasurer, seeking a return or recovery of the money, currency or cash so held in custody, before the court shall proceed so to order a forfeiture of such money, currency or cash to the State, county or Baltimore City.

(1) All applications for the forfeiture of contraband shall be by petition and a copy of the petition and show cause order shall be served in the first instance pursuant to Rule 104 of the Maryland Rules of Procedure or Rule No. 104 of the Maryland District Rules, and thereafter, the summons having been returned non est, the State Treasurer, director of finance of Baltimore City or county treasurer may proceed pursuant to Rule 105 b, subsection 2 and subsection 3 of the Maryland Rules of Procedure as amended, or Rule No. 104 h of the Maryland District Rules.

(d) *Application for return of seized money.* — (1) Upon the ultimate disposition of such charge or charges, indictment or indictments, resulting in acquittal, dismissal, a stet, a nolle prosequi, or probation under the provisions of § 641, any person claiming that all or any of the seized money, currency, or cash is not contraband of law under (a) and should be returned to the claimant, within one year after the date the judgment or order was entered or the action was taken which constituted the ultimate disposition, may make application on giving ten days' prior written notice to the State Treasurer, custodian, county treasurer, or director of finance, to the appropriate court for a determination that the money, currency, or cash is the property of the claimant and for an order that it be returned.

(2) In a proceeding upon that application an acquittal, a dismissal, or a nolle prosequi with respect to the gambling charges or indictments involved in the seizure of the money, cash, or currency is prima facie evidence that it is not contraband. A conviction, plea of guilty or of nolo contendere, and probation under the provisions of § 641 is prima facie evidence that it is contraband. No presumption in the proceeding shall attach to an entry of stet.

(3) If a petition is not timely and properly filed, or if it is finally decided against the claimant, the seized moneys not disposed of shall be forfeited to the custodian without further judicial action.

(4) Timely notice must be given by certified mail or other appropriate means to any known claimants, at their last known address, of the requirements of this section for making claim for the return of seized moneys, or the seized moneys shall not be forfeited as provided by paragraph (3) of this section.

(e) *Definitions; immediate return of seized property.* — (1) In this section the following words have the meanings indicated.

(2) *"Ultimate disposition"* of charges and of indictments

there was a gray area [under the old law] as to who had the burden of filing the petition for forfeiture when a criminal defendant had received probation before verdict.

We are trying to clear up any ambiguity which may have existed in the old law in order to be clear as to who has the burden of filing the petition for forfeiture and who has the burden of going forward with the court case. The eventual court hearing could be held to determine whether or not the money confiscated by members of the Baltimore City Police Department in connection with the defendant's criminal arrest was, in fact, contraband of law under the provisions of Article 27, Section 264 (a) and (d) (2).

Section 264 (c) of the 1977 enactment had directed that in cases where there was a record of conviction (defined to include pleas of guilty and *nolo contendere,* Article 27, § 264 (e) (3)) the County Treasurer or Director of Finance was to petition for forfeiture and that in cases where there was an acquittal, dismissal, stet, or *nolle prosequi* it was up to the claimant to petition for return of the money. Article 27, § 264 (d) (1). The 1979 Amendment merely includes "probation under the provisions of section 641 [probation before judgment]" among the group of favorable dispositions in § 264 (d) (1), thus mandating that it was the claimant's responsibility in such cases to petition to get his money back. Further, § 264 (d) (2) was amended to include probation before judgment among those dispositions where the disposition is *prima facie* evidence that the money is contraband. *See* 1979 Md. Laws, Ch. 123.

---

includes acquittal, dismissal, guilty, probation prior to judgment, pleas of guilty and of nolo contendere, a stet, a nolle prosequi, and termination of the criminal proceedings pursuant to appeal.

(3) *"Record of conviction"* includes pleas of guilty and of nolo contendere.

(4) This section does not prohibit the trial judge after an acquittal or dismissal from ordering immediate return of all property seized.

It is clear then that as § 264 has legislatively evolved it has responded to perceived needs experienced by the judicial machinery administering its provisions and has become a comprehensive enactment detailing the procedures to be followed where money has been seized as the result of arrests for gambling violations. Having provided such a detailed procedure, the Legislature has admonished those responsible for its administration in unmistakable and compelling terms that *no* money seized pursuant to gambling arrests *"shall be returned to any person claiming the same, or to any other person, except as provided by this section."* Article 27, § 264 (a) (emphasis supplied).

Having explored at length the history and general characteristics of forfeiture proceedings and the history and specific provisions of Article 27, § 264, we believe it advisable to summarize and explain the pertinent mechanics of § 264 in light of this development, prefatory to an application of the law to the facts of the case at bar.

Seizure of money pursuant to gambling violations, by legislative determination, transforms that money into *prima facie* contraband. Article 27, § 264 (a). Until evidence is presented to rebut this statutory inference, it is illegal for anyone other than the seizing authority to possess the money. Section 264 (a) vests all rights, title, and interest in the money at the moment of seizure in the seizing jurisdiction.

The proceeding to determine whether the money shall be forfeited or returned to its claimant is a civil *in rem* proceeding where the money itself is the thing proceeded against and which is unconnected with any criminal proceeding. *See One Lot Emerald Cut Stones and One Ring v. United States, supra; Pr. George's Co. v. Blue Bird Cab, supra.* The standard of proof, therefore, is the preponderance of the evidence standard. *Pr. George's Co. v. Blue Bird Cab, supra.* The result of any criminal proceeding does, however, raise certain statutory presumptions. Article 27, § 264 (d) (2).

If the result is a conviction of record, then there is a presumption that the money is contraband, § 264 (d) (2), and the seizing jurisdiction has ninety days within which to apply to a court to have the money forfeited. However, the Legislature in enacting § 264 (d) seems to have modified our holding in *United States Coin & Currency v. Dir.*, 279 Md. 185, 367 A.2d 1243 (1977), that the seizing jurisdiction's untimely filing caused it to lose its claim to the money. Under § 264 (d) the claimant does not become entitled to the money merely because the governmental entity fails to file for forfeiture within ninety days. The claimant still must apply for its return and he must do so within one year after the date of the judgment of conviction. He then must also overcome the presumption that the money is contraband. Failing either condition, § 264 (d) (3) would forfeit the seized money to the custodian.

Similarly, if the ultimate disposition is the result of a plea of guilty or *nolo contendere* or results in probation under the provisions of Article 27, § 641, then the money is presumptively contraband, Article 27, § 264 (d) (2), and any claimants must apply for its return within one year and prove that it was not used illegally. Article 27, § 264 (d) (1). If the ultimate disposition is an acquittal, dismissal, or *nolle prosequi* then the money is presumptively not contraband, Article 27, § 264 (d) (2), and any claimant must apply to the court for an order that it be returned, Article 27, § 264 (d) (1), during which proceeding the burden is on the State, if it is able, to show by a preponderance of the evidence that the money was used as part of a gambling violation. *See Pr. George's Co. v. Blue Bird Cab, supra.*[6]

---

6. In Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the Supreme Court held that evidence illegally seized from an automobile being used to transport whiskey in violation of Pennsylvania law was inadmissible in a proceeding to forfeit said vehicle. The Court did not suggest that an illegally seized vehicle must be returned to the defendant and could not be forfeited if there were independent evidence that said vehicle had been illegally used. As it happened, in Plymouth Sedan there was no such independent, untainted evidence. However, when such untainted evidence is available, Plymouth Sedan implicitly authorizes the government to obtain forfeiture. *See* United States v. One (1) 1971 Harley-Davidson Motor., 508 F.2d 351 (9th Cir. 1974); John Bacall Imports,

Having developed the relevant law we proceed to apply it to the facts of the case before us. Here when the money was seized it was deemed *prima facie* contraband as a matter of law and all rights, title, and interest in the money vested in Prince George's County. The State filed a one-count charging document in the District Court, which was transferred to the circuit court when Cole prayed a jury trial. The State ultimately moved to dismiss that prosecution but before doing so it filed a seven-count criminal information in the District Court. The second attempt at prosecution was subsequently *nol prossed* by the State.

Throughout the pendency of these proceedings the character and status of the money seized did not change one whit. Once an ultimate disposition of *nol pros* was reached there was *prima facie* evidence that the money was not contraband. Article 27, § 264 (d) (2). However, all rights, title, and interest still had vested in the county and until a civil proceeding was held to determine, by a preponderance of the evidence, whether the money had in fact been part of a gambling operation, all rights, title, and interest would remain in the county.

Within ninety days of the State's entry of *nol pros* Prince George's County filed a petition for forfeiture of the funds seized. This petition was demurred to in a civil proceeding and the demurrer was properly sustained by the trial judge because there had been no conviction forming a basis for the State's application. *See Director of Fin., Pr. Geo's Co. v. Cole, supra.* Nonetheless, custody of the money was still vested in Prince George's County.

Ltd. v. United States, 412 F.2d 586 (9th Cir. 1969); United States v. $297,235.00, 516 F. Supp. 720 (E.D. Mo. 1981); Mayo v. United States, 413 F. Supp. 160 (E.D. Ill. 1976); Farley v. $168,400.97, 55 N.J. 31, 259 A.2d 201 (1969); State v. Sherry, 46 N.J. 172, 215 A.2d 536 (1965); State v. Jones, 181 N.J. Super. 549, 438 A.2d 581 (1981); Fuqua v. Armour, 543 S.W.2d 64 (Tenn. 1976); *see also* United States v. $1,058.00 in United States Currency, 323 F.2d 211 (3rd Cir. 1963); Interbartolo v. United States, 303 F.2d 34 (1st Cir. 1962); State v. Merchandise Seized, 225 N.W.2d 921 (Iowa 1975). Certainly the dissent does not suggest that *per se* contraband must be returned to the defendant if illegally seized. As we see it, there is no constitutional basis for making a distinction between *per se* and derivative contraband; therefore, the Legislature may prescribe the procedure to be followed in obtaining forfeiture (*i.e.*, in this case, § 264).

On May 6, 1980, Cole filed a motion for return of the money in the criminal appeal which had been voluntarily dismissed on February 8, 1979, in the Circuit Court for Prince George's County. This action was clearly more than one year after the ultimate disposition in that case and is governed by § 264 (d) (3) resulting in an automatic forfeiture to the county.

However, even assuming *arguendo* that the proceeding initiated by the county somehow tolled this limitations period for Cole, there still has been no proceeding held in conformance with Article 27, § 264 (d). The motion filed was done in the criminal case. As we said earlier, the forfeiture proceeding is a separate civil action that has nothing to do with the criminal proceeding other than the presumptions to which the ultimate disposition in the criminal case gives rise. At the hearing on the motion the Assistant County Attorney for Prince George's County continually bemoaned the fact that he had not and was not allowed to offer evidence that the money was contraband. The judge proceeded on the premise that the criminal proceeding had sufficiently determined this question and ruled accordingly. This quite clearly contravened the language and purpose of § 264 and fell far short of the requirements of the statute.

Finally, it is Cole's contention, concurred in by the lower court, that Article 27, § 264 and Article 27, § 551 provide an alternate means for returning the money. Rather than treating Cole's request for return of his money as a separate civil proceeding, the trial court assumed it had the authority to order the county to give up the money. To justify its decision the court concluded, construing Article 27, § 264 (e) (4) together with Article 27, § 551, that these two sections empowered the trial court, as part of its jurisdiction over the criminal case, to order the custodian of seized money to return that money. This rationale enabled the lower court to hold that, because neither Prince George's County nor the Director of Finance for Prince George's County were parties to the criminal proceeding, there was no requirement that they be represented at the proceeding to determine the

status of the money. This rationale is inapplicable in this case and, as we shall see, it is also entirely unsound as a general proposition.

Sections 264 (e) (4) and 551 simply do not apply. First, these sections are inapplicable because Cole's funds already had been forfeited to the county pursuant to § 264 (d) (3). Under § 264 (d), if a petition for the return of seized money is not properly filed within one year from the date of the ultimate disposition of that case, the seized moneys are "forfeited to the custodian without further judicial action." Cole filed his motion seeking the return of the seized money on May 6, 1980, in the original criminal case, which had been transferred to the circuit court and was voluntarily dismissed on February 8, 1979. Cole's motion was filed over a year after the ultimate disposition of the criminal case in which he sought the return of his money; therefore, his action was ineffective. Section 264 (d) (3) in effect acts as a statute of limitations. Even if the defendant could petition the criminal court for return of his money, he could not do so more than a year after the ultimate disposition of that criminal case.

Furthermore, neither § 264 (e) (4) nor § 551 (b) even applied to the facts in *Cole*. Section 264 (e) (4) applies only where there has been "an acquittal or dismissal." These terms refer to actions taken by the trial court terminating the proceedings favorably to the accused. The docket entry evidencing the termination of this criminal proceeding indicates that the case was "dismissed by the State." This disposition was not a dismissal as that term is used in § 264 (e) (4), but rather a *nolle prosequi. See Hooper v. State,* 293 Md. 162, 168, 443 A.2d 86 (1982). Therefore, § 264 (e) (4) did not authorize Cole to proceed in the criminal case. Absent any application of § 264 (e) (4), § 551 is clearly irrelevant. Section 264 (a) provides that no money shall be returned to any person except as provided in this section. This clearly preempts any application of § 551 unless it is used in concert with § 264 (e) (4). Because subsection (e) (4) does not apply in *Cole,* § 551 also could not apply.

Finally, even if the trial court arguably acted pursuant to § 551 (b), the express requirements of this section were not met. This section provides for the return of all property "*except* contraband." Section 264 (a) clearly states that money seized in connection with a gambling arrest is "deemed prima facie to be contraband of law." Because this money was deemed contraband, § 551 (b) expressly precluded its return to the defendant. Although the trial judge ordered the return of the money, he never found that the money was not in fact contraband. The trial judge simply reasoned that if the property was not contraband *per se* and if the State could not prove in the criminal court that it was seized pursuant to a gambling operation, then the county could not keep the money. This analysis cannot logically be construed as a factual determination that money was not contraband, thus overriding the § 264 (a) presumption that it was contraband. Therefore, because the money was presumptively contraband, § 551 could not apply.

For these reasons, we hold that the trial judge erred in relying on these provisions as authorization for ordering the county to return money to Cole. Furthermore, we conclude that in general these provisions do not provide an alternative procedure to that outlined in detail in § 264.

Article 27, § 264 (e) (4) provides that the provisions of § 264 do "not prohibit the trial judge after an acquittal or dismissal from ordering immediate return of all property seized." This section, as we have observed, became a part of § 264 in 1977. 1977 Md. Laws, Ch. 720. It was part of the effort to eliminate confusion and facilitate the rapid and smooth disposition of seized money that characterized this legislation. It hardly seems logical that the purpose would be served, however, by tacking on a section at the end of § 264 that would abrogate the elaborate procedure of the statute by allowing the return of money absent a consideration of the prevailing presumptions and character of the money.

Sections 264 (a) through (d) outline a clear civil procedure logically dealing with the disposition of money seized pursuant to gambling arrests. Subsection (e) (4) merely makes

a general statement that this section does not prohibit the trial judge from ordering an immediate return of all property seized. Subsection (e) (4) establishes no procedures to be followed, makes no provision for the local government holding the funds to be represented, and does not address the appropriate procedure if there are conflicting claims to the money. This provision is simply a general statement that cannot easily be reconciled with the detailed procedure outlined in the rest of the statute. Giving it the effect suggested by the lower court would totally abrogate the obvious purposes of this act, again creating confusion and uncertainty in the disposition of this money. It is well established that a specific, well-defined portion of a statute will control a general, uncertain provision of the same statute. *See State Dep't v. Ellicott-Brandt,* 237 Md. 328, 335-36, 206 A.2d 131 (1965); *Maguire v. State,* 192 Md. 615, 623, 65 A.2d 299 (1949); *see also* 2A Sutherland, *Statutory Construction* § 46.05 (4th ed. Sands 1973) (stating that "[w]here there is inescapable conflict between general terms or provisions of a statute and other terms or provisions therein of a specific nature, the specific will prevail and be given effect over the general"). Therefore, when the money seized in a gambling case is presumptively contraband at the time of seizure § 264 (e) (4) has no application and the judge in the criminal proceeding has no authority to order return of the money.

Finally, we note that Article 27, § 551 is a general search and seizure statute.[7] It provides that where there has been

_____

7. Section 551, in pertinent part provides:

If, at any time, on application to a judge of the circuit court of any county or of the Criminal Court of Baltimore or judge of the District Court, it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, or that the property was taken under a warrant issued more than 15 calendar days prior to the seizure, said judge must cause it to be restored to the person from whom it was taken. In the discretion of the judge, an oral motion made in open court may be received at any time making application for the return of seized property if the application for return is based on the grounds that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, or that the

an entry of *nol pros,* dismissal, or acquittal "all property of the person, *except contraband . . .,*' may be returned to the person to whom it belongs without the necessity of that person instituting an action for replevin or any other legal proceeding. . . ." Article 27, § 551 (b) (emphasis supplied). The contraband exception was added by Chapter 704 of the 1975 Laws of Maryland, significantly, perhaps, just one year after the embellishments of Chapter 666 in 1974, noted above. It is obvious, especially in light of the language of § 264 (a), which provides that no money is to be returned except as provided by § 264, that the Legislature did not intend that § 551 should have any impact upon the disposition of money seized pursuant to gambling violations, which is *prima facie* contraband.

property was taken under a warrant issued more than 15 calendar days prior to the seizure. If the judge grants the oral motion, the order of the court shall be in writing and a copy of the order shall be sent to the State's attorney. If the judge rejects the proffer on an oral motion and requires the person from whom the property was taken to proceed for return of the seized property by petition and an order to show cause to the police authority seizing the property and it is subsequently ordered that the property be restored to the person from whom it was taken, court costs shall not be assessed against the petitioner. However, if it appears that the property taken is the same as that described in the warrant and that there is probable cause for believing the existence of the grounds on which the warrant was issued, then said judge shall order the same retained in the custody of the person seizing it or to be otherwise disposed of according to law.

(b) If the criminal case in which property of a person was seized pursuant to a search warrant issued under subsection (a) of this section is disposed of because of (i) an entry of nolle prosequi, (ii) dismissal, or (iii) acquittal, or if the State does not appeal such a criminal case or if the time for appeal has expired, all property of the person, except contraband or any property prohibited by law from being recoverable, may be returned to the person to whom it belongs without the necessity of that person instituting an action for replevin or any other legal proceeding against the agency having custody of the property.

(c)(1) If, at any time, on application to a judge of the circuit court of any county or of the Criminal Court of Baltimore City or judge of the District Court, it is found that property rightfully taken under a search warrant is being wrongfully withheld after there is no further need for retention of the property, the judge must cause it to be restored to the person from whom it was taken.

(2) In the discretion of the judge, an oral motion made in open court may be received at any time making application for the return of seized property if the application for return is based on the grounds that the property, although rightfully taken under a

We hold, therefore, that money seized for gambling violations covered by Article 27, § 264 (a) cannot be returned to its claimant through any means other than those provided for in Article 27, § 264. In the instant case, in which there was no civil proceeding nor any adjudication of whether the money was contraband, Article 27, § 264 was not complied with and Prince George's County cannot be compelled to release the money.

> *In No. 107 — Director of Finance v. Cole, judgment of the Circuit Court for Prince George's County reversed.*
>
> *Cole to pay the costs.*
>
> *In No. 108 — Director of Finance v. Goldberg, judgment of the Circuit Court for Prince George's County vacated and case remanded to that Court for dismissal of appeals.*
>
> *Prince George's County to pay the costs.*

*Eldridge, J., concurring in part and dissenting in part:*

I fully concur with the portion of the Court's opinion and judgment relating to the defendant Goldberg. For the reasons set forth in that opinion, the circuit court should have dismissed both appeals in the *Goldberg* case.

In the *Cole* case, however, I must dissent. First, I do not believe that the case comes within the scope of Art. 27, § 264, as delineated in subsection (a) of that statute. Second, even if the case falls within the coverage of § 264, I disagree with the majority's interpretation and application of Art. 27, §§ 264 (d), 264 (e) (4) and 551. Before addressing these issues, the relevant facts of the *Cole* case should be set forth.

---

search warrant, is being wrongfully withheld after there is no further need for retention of the property. If the judge grants the oral motion, the order of the court shall be in writing and a copy of the order shall be sent to the State's attorney.

On September 1 and 23, 1977, two court orders were issued authorizing the interception of telephone communications from three telephone numbers in Prince George's County, for the purpose of gathering evidence of gambling. Based upon information gained from the wiretaps, search warrants were issued pursuant to Art. 27, § 551 (a) of the Maryland Code.[1] The warrants were executed; Richard Cole and others were arrested, and $15,000.00 in cash was seized by the police. The seized money was turned over to the Director of Finance of Prince George's County.

A single-count charging document was filed in the District Court of Maryland, charging Cole with conspiracy to violate the gambling laws. Cole filed a request for a jury trial, and the case was removed to the Circuit Court for Prince George's County. The State, on September 21, 1978, filed a motion in the circuit court to amend the charging document

---

1. Maryland Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.), Art. 27, § 551 (a), as it read during the relevant time period, provided in part:

"§ 551. Issuance; contents; time of search, etc.; disposition of property seized.

(a) Whenever it be made to appear to any judge of the Supreme Bench of Baltimore City, or to any judge of any of the circuit courts in the counties of this State, or to any judge of the District Court, by written application signed and sworn to by the applicant, accompanied by an affidavit or affidavits containing facts within the personal knowledge of the affiant or affiants, that there is probable cause, the basis of which shall be set forth in said affidavit or affidavits, to believe that any misdemeanor or felony is being committed by any individual or in any building, apartment, premises, place or thing within the territorial jurisdiction of such judge, or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing, then the judge may forthwith issue a search warrant directed to any duly constituted policeman, or police officer authorizing him to search such suspected individual, building, apartment, premises, place or thing, and to seize any property found liable to seizure under the criminal laws of this State, provided that any such search warrant shall name or describe, with reasonable particularity, the individual, building, apartment, premises, place or thing to be searched, the grounds for such search and the name of the applicant on whose written application as aforesaid the warrant was issued, and provided further that any search or seizure under the authority of such search warrant, shall be made within 15 calendar days from the date of the issuance thereof and after the expiration of the 15-day period said warrant shall be null and void. . . ."

by setting forth seven specific charges, four being substantive violations of the gambling laws and three being conspiracy charges. Shortly thereafter, the trial judge denied the State's motion to amend its charging document. Consequently, the State filed a new charging document, with seven counts, against Cole in the District Court. On February 8, 1979, the State moved to dismiss the pending circuit court case, and this motion was granted.

Next, pursuant to a suppression motion filed by Cole, the court suppressed all evidence derived from the wiretaps on the ground that the wiretaps were illegal. The State then nol prossed the new District Court charging document.

Within 90 days thereafter, Prince George's County (the County) filed a petition in equity in the Circuit Court for Prince George's County, seeking forfeiture of the seized money under Art. 27, § 264 (a) and (c).[2] The court sustained Cole's demurrer to the petition on the ground that he had not been convicted of any gambling offense, and ordered that the money be returned to Cole. That order was appealed by the County to the Court of Special Appeals which affirmed the circuit court's sustaining of the demurrer but reversed its return of Cole's money. *Director of Fin., Pr. Geo's Co. v. Cole,* 48 Md.App. 633, 428 A.2d 1227 (1981).[3]

---

**2.** Art. 27, § 264 (a) and (c), provide in part as follows:

"(a) *Deemed contraband.* — Whenever any money, currency, or cash is seized or captured by any police officer in this State in connection with any arrest for the playing or operation of any bookmaking, betting and wagering on horses or athletic events, or any lottery, game, table, or gaming device unlawful under the provisions of this article, all such money, currency, or cash shall be deemed prima facie to be contraband of law as a gambling device or as a part of a gambling operation. . . .

\* \* \*

"(c) *Forfeiture upon conviction.* — If the trial or other ultimate disposition of such charge . . . results in a record of conviction being entered against the person or persons so arrested, . . . the county treasurer . . . shall within 90 days from the date of the record of the entry of such conviction . . . make application to the . . . court . . . for an order declaring . . . that such money . . . shall be forfeited. . . ."

**3.** There was no further review of the Court of Special Appeals' decision by this Court, and the issues in that case are not before us in the instant case. Consequently, it would be inappropriate to express any opinion concerning the decision of the Court of Special Appeals.

While the appeal to the Court of Special Appeals was pending in the County's civil forfeiture action under § 264 (c), Cole filed in the circuit court *criminal* case a "Motion For Appropriate Relief (Return of Seized Property)," seeking a return of the $15,500.00 seized pursuant to the search warrant. The County answered by filing a motion to intervene and an opposition to the return of the money, arguing that Art. 27, § 264 (e) (4), did not authorize the relief. The defendant Cole responded by opposing intervention and arguing that Art. 27, §§ 551 and 264 (e) (4), authorized the motion for return of the property.[4]

---

4. Art. 27, § 551 (b), enacted by Ch. 704 of the Acts of 1975, provides as follows:

"(b) If the criminal case in which property of a person was seized pursuant to a search warrant issued under subsection (a) of this section is disposed of because of (i) an entry of nolle prosequi, (ii) dismissal, or (iii) acquittal, or if the State does not appeal such a criminal case or if the time for appeal has expired, all property of the person, except contraband or any property prohibited by law from being recoverable, may be returned to the person to whom it belongs without the necessity of that person instituting an action for replevin or any other legal proceeding against the agency having custody of the property."

Art. 27, § 551 (c), enacted by Ch. 704 of the Acts of 1976, provided as follows during the relevant time period:

"(c)(1) If, at any time, on application to a judge of the circuit court of any county or of the Criminal Court of Baltimore City or judge of the District Court, it is found that property rightfully taken under a search warrant is being wrongfully withheld after there is no further need for retention of the property, the judge must cause it to be restored to the person from whom it was taken.

(2) In the discretion of the judge, an oral motion made in open court may be received at any time making application for the return of seized property if the application for return is based on the grounds that the property, although rightfully taken under a search warrant, is being wrongfully withheld after there is no further need for retention of the property. If the judge grants the oral motion, the order of the court shall be in writing and a copy of the order shall be sent to the State's attorney.

(3) If the judge rejects the proffer of an oral motion and requires the person from whom the property was taken to proceed for return of the seized property by petition and an order to show cause to the authority wrongfully withholding the property and it is subsequently ordered that the property be restored to the person from whom it was taken, court costs shall not be assessed against the petitioner."

The defendant's motion for return of the property, together with the County's motion to intervene, was heard by the circuit judge who had presided over the criminal case (Bowen, J.) on June 6, 1980. At the conclusion of the hearing, the court denied the motion to intervene, held that the money was not contraband, and held that the money ought to be returned. The court indicated, however, that if the civil case were reversed on appeal, further proceedings would be held.

After the Court of Special Appeals' decision in the civil case, on May 11, 1981, the County filed a motion for reconsideration in the criminal case, and Judge Bowen conducted a further hearing on August 4, 1981. During the hearing, the County represented that "if [the money] is not connected to gambling then we agree it should be returned." At the conclusion of the hearing, Judge Bowen delivered an oral opinion pointing out that the "money was seized in connection with an accusation of gambling," that "the criminal charges could not be proven," that money is not contraband per se, and that, once the possibility of proving a gambling violation disappeared, the money was not contraband under the statutes. The court held that the County would be permitted to intervene and that the money would be returned. An order permitting intervention and returning the $15,500.00 to the defendant Cole was filed on September 1, 1981, and the County filed an order of appeal on the same day. Prior to briefing and argument in the Court of Special Appeals, this Court granted the County's petition for a writ of certiorari.[5]

---

Art. 27, § 264 (e) (4), enacted by Ch. 720 of the Acts of 1977, provides as follows:

"This section does not prohibit the trial judge after an acquittal or dismissal from ordering immediate return of all property seized."

5. As the case was not decided by the Court of Special Appeals, we are not limited to the issues raised in the certiorari petition. Rather, under Maryland Rule 813 b, "this Court will consider those issues which would be cognizable in a case on direct appeal." Consequently, the principle that an appellate court wil ordinarily affirm a trial court's judgment on any ground adequately shown by the record, even though not relied on by the trial court

642

## I.

The majority states on the first page of its opinion that the issue in this case is "whether a trial court, as part of its criminal proceedings, can order the return of money seized pursuant to an arrest for gambling violations covered by Article 27, § 264." The threshold question, however, is whether this case involves "money seized pursuant to an arrest for gambling violations covered by ... § 264." If it does not, § 264 is simply not applicable, and no issue arises as to whether the trial court can, under § 264, order the return of the money in the criminal case.

The coverage of Art. 27, § 264, is set forth in subsection (a) of the statute. Under subsection (a), the statute is applicable "[w]henever any money, currency, or cash is seized ... by any police officer ... in connection with any arrest for" specified gambling violations. In my view, there are two separate reasons why § 264 has no application to this case.

### A.

The gambling violations listed in § 264 (a) are all substantive gambling offenses under Art. 27 of the Code, such as bookmaking, lottery, etc.[6] The defendant Cole was not arrested for any of these substantive offenses. Instead, as shown by the District Court charging document, the arrest was for "conspiracy to violate the gambling laws," and the money was seized in connection with this arrest for conspiracy. Conspiracy to violate the gambling laws is *not* one of the offenses set forth in § 264.

It is settled that "the crime of conspiracy is not the same in law and in fact as the substantive crime which the appel-

and not urged by a party, is fully applicable. *See* J. I. Case Credit Corp. v. Insley, 293 Md. 483, 487, 445 A.2d 689 (1982), and cases there cited.

**6.** The language of § 264 (a) encompasses money seized "in connection with any arrest for the playing or operation of any bookmaking, betting and wagering on horses or athletic events, or any lottery, game, table, or gaming device unlawful under the provisions of this article . . . ."

lant, if guilty, conspired to commit." *Rouse v. State,* 202 Md. 481, 485, 97 A.2d 285, *cert. denied,* 346 U.S. 865, 74 S.Ct. 104, 98 L.Ed. 376 (1953) (distinguishing between the substantive offense of lottery and conspiracy to violate the lottery laws). *Accord: Scarlett v. State,* 201 Md. 310, 318-319, 93 A.2d 753, *cert. denied,* 345 U.S. 955, 73 S.Ct. 937, 97 L.Ed. 1377 (1953) (similarly distinguishing the substantive offense of lottery from the offense of conspiracy to violate the lottery laws); *Gilpin v. State,* 142 Md. 464, 467-468, 121 A. 354 (1923); *Garland v. State,* 112 Md. 83, 86-87, 75 A. 631 (1910); *Jones v. State,* 8 Md.App. 370, 379-380, 259 A.2d 807 (1969). "The crime [of conspiracy] is complete without any overt act .... The gravamen of the crime is the illegal scheme or design harbored by at least two persons." *Gardner v. State,* 286 Md. 520, 524, 408 A.2d 1317 (1979). *See Greenwald v. State,* 221 Md. 245, 250, 157 A.2d 119, *appeal dismissed,* 363 U.S. 721, 80 S.Ct. 1599, 4 L.Ed.2d 1521 (1960).

The majority in this case, by treating the offense of conspiracy as identical to the substantive gambling offenses enumerated in § 264, has ignored or *sub silentio* changed a long-established principle of criminal law. I would adhere to that principle and affirm the circuit court's judgment on the ground that § 264, upon which Prince George's County relies, has no application to money seized in connection with an arrest for conspiracy.

## B.

If conspiracy to violate the gambling laws were an offense covered by § 264, the statute would nevertheless be inapplicable under the facts of the case, and there would still be no need to reach the statutory interpretation issues with which the majority is concerned. In this case, the arrest, the charge and its associated allegations resulted from an illegal wiretap, and the trial judge ordered all fruits of that wiretap suppressed. Under Code (1974, 1980 Repl. Vol.), §§ 10-405 and 10-408 (i) (2) of the Courts and Judicial Proceedings

Article, the results of an illegal wiretap cannot be used in "any trial, hearing or other proceeding." *See also* 18 U.S.C. § 2515 and S. Rep. No. 1097, 90th Cong., 2d Sess. 69 (1968) ("[t]he perpetrator must be denied the fruits of his unlawful actions in civil and criminal proceedings"). Moreover, the fruits of an illegal seizure cannot be used as evidence in a forfeiture proceeding without violating the Fourth Amendment. *Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Any illegally seized evidence that is not contraband per se, including money, must be returned unless independent evidence is introduced to prove that it is contraband. 380 U.S. at 699-700. Consequently, this Court cannot look to the fruits of the illegal wiretap in *Cole* to determine that the case falls within § 264. Because there was no independent evidence showing that the money was seized in connection with an arrest for a gambling offense enumerated in § 264, that statute is inapplicable.[7]

## II.

If Art. 27, § 264, is applicable to this case, the question posed by the majority must be answered, namely may a trial judge, as part of the criminal case, order the return of the money under Art. 27, §§ 551 and 264 (e) (4). This involves an interpretation of §§ 551 and 264 (e) (4) and their relationship to subsections (a)-(d) of § 264.

Section 551, previously quoted in notes 1 and 4, *supra,* provides in subsection (b) that if the criminal case, in which property was seized under a search warrant issued under subsection (a), was disposed of by a nol pros, dismissal or acquittal, all property seized except contraband may be returned without the necessity of any action being instituted

---

7. The majority in n. 6, after citing *Plymouth Sedan* and other cases, states that "there is no constitutional basis for making a distinction between *per se* and derivative contraband." But the Supreme Court in *Plymouth Sedan* specifically distinguished between per se contraband and derivative contraband for purposes of the exclusionary rule; in fact, this was the major point of the Supreme Court's opinion. *See* 380 U.S. at 699-700.

against the government agency having custody. Subsection (c) of § 551 provides for the return of property rightfully taken under a search warrant but wrongfully withheld after there is no further need for retention of the property. Section 264 (e) (4), also set forth in note 4, *supra,* states that § 264 does not prohibit the trial judge, after an acquittal or dismissal, from ordering the return of all property seized. Assuming that this case falls within the coverage of § 264 (a), the language of §§ 551 (b) and 264 (e) (4) specifically authorized the order for the return of the property. The majority's reasons for arriving at a contrary result will not withstand analysis.

## A.

The first reason given by the majority for holding that §§ 551 (b) and 264 (e) (4) did not authorize the motion and order for the return of the property, is that the motion was filed too late and that, therefore, the property was already forfeited to the County pursuant to § 264 (d) (3).

Subsection (d) of § 264 deals solely with *civil* actions for the return of money seized pursuant to subsection (a). Subsection (d) (1) provides that the claimant "may" institute such civil action within one year from the "ultimate disposition" of the criminal charges, and subsection (d) (3) provides that if the civil petition is not timely filed, the seized moneys not disposed of shall be forfeited to the governmental custodian. The majority asserts that the one year time limit for a civil action under subsection (d) is also applicable to a motion in a criminal case under §§ 264 (e) (4) and 551 (b). As Cole's motion was filed more than a year from the initial dismissal of the criminal charge, the majority maintains that it was untimely and that, consequently, the money was finally forfeited under subsection (d) (3). This reasoning is erroneous. Because § 264 (e) (4) creates an exception to the entire remainder of § 264, the one-year time limit for a *civil* action in § 264 (d) is inapplicable to a motion in a *criminal* case under §§ 264 (e) (4) and 551 (b). In addition, § 551 (b)

specifically provides that the procedure there authorized is an alternative to any civil action for the return of the property. As neither §§ 264 (e) (4) nor § 551 (b) contain any period of limitations for the filing of motions in the criminal case, the only time limit would seem to be provided by the principle of laches. Under the facts, there would be no basis for a holding that Cole's motion should have been barred by laches.

Even if the one-year time limit of § 264 (d) were applicable to a motion in the criminal case, the motion by the defendant Cole was timely. As indicated above, the one-year period of limitations contained in subsection (d) begins to run from "the ultimate disposition of" the criminal "charge or charges." Here the "ultimate disposition" of the criminal charges was the nol pros entered in January 1980, and Mr. Cole's motion for return of the property was made in May 1980, clearly within one year.

### B.

Alternatively, the majority concludes that, even if Cole's motion for return of the property was timely under § 264 (d), neither § 551 nor § 264 (e) (4) authorized that motion.

### (1) *Section 551*

With respect to Art. 27, § 551, the majority holds that it is inapplicable because "the legislature did not intend that § 551 should have any impact upon the disposition of money seized pursuant to gambling violations, which is *prima facie* contraband." The majority apparently means that the phrase in subsection (b) covering the return of "property . . . seized pursuant to a search warrant issued under subsection (a) of this section," and the phrase in subsection (c) covering the return of "property . . . taken under a search warrant;" do not include money seized in connection with an arrest for

alleged gambling violations. This interpretation of § 551 would lead to the absurd result that no search warrant could be issued under § 551 (a) for money allegedly used in connection with illegal gambling. The "property" which is the subject of a motion for return under subsections (b) and (c) is the same "property" which can be the subject of a search warrant under subsection (a).

By plain and unambiguous language, subsection (b) of § 551 authorized the type of application made in *Cole.* Subsection (b) encompasses property seized by a search warrant under § 551 (a), and money allegedly used in illegal gambling can certainly be seized by a warrant under § 551 (a).[8] Subsection (b) covers the situations where the criminal charges were disposed of by nol pros, dismissal or acquittal; the subsection is thus clearly applicable in the *Cole* case. Although the majority attempts to read an exclusion into § 551 for money which is alleged to be contraband and which falls within § 264 (a), § 551 (b) expressly applies to "all property" of the defendant except that which is in fact contraband.[9] Subsection (b) *of* § 551 also expressly does away with the necessity of the defendant instituting "any other legal proceeding against the agency having custody of the property." The majority's construction of § 551 (b) cannot be squared with this Court's repeated admonition that, where statutory language is unambiguous, courts should give effect to the statute as written. *See, e.g., Lowenthal v. Rome,* 294 Md. 277, 281-282, 449 A.2d 411 (1982), *cert. denied,* U.S.    , 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983); *Guardian Life Ins. v. Ins. Comm'r,* 293 Md. 629, 642-643, 446 A.2d 1140 (1982); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 389,

---

**8.** In fact the Court of Special Appeals, in a recent scholarly opinion by Judge Moylan, has suggested that § 551 was enacted specifically because of gambling cases. In Re Special Investigation No. 228, 54 Md.App. 149, 160, 458 A.2d 820, 825 (1983). As pointed out in that opinion, *ibid.,* what is now § 551 was previously codified under the "Gaming" subtitle of the Code. *See* Maryland Code (1939), Art. 27, § 306.

**9.** While the majority attempts to explain away his conclusion, Judge Bowen in the *Cole* case expressly found on two occasions that the money was not contraband. Even without this conclusion, once the first criminal case was dismissed and the second criminal case was nol prossed, the money was no longer presumptively contraband. *See* § 264 (d) (2).

444 A.2d 1024 (1982); *State v. Loscomb,* 291 Md. 424, 429, 435 A.2d 764 (1981); *Gietka v. County Executive,* 283 Md. 24, 27, 387 A.2d 291 (1978); *Guy v. Director,* 279 Md. 69, 72, 367 A.2d 946 (1977); *Slate v. Zitomer,* 275 Md. 534, 539-540, 341 A.2d 789 (1975), *cert. denied, sub. nom. Gasperich v. Church,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976).

### (2) *Section 264 (e) (4)*

The trial court's order in *Cole* was also fully warranted under Art. 27, § 264 (e) (4). The majority holds that "when the money seized in a gambling case is presumptively contraband at the time of seizure § 264 (e) (4) has no application and the judge in the criminal proceeding has no authority to order return of the money." As § 264 (a)-(d) relates only to money, seized in connection with a gambling arrest, which is presumptively contraband at the time of seizure, the majority is holding that § 264 (e) (4) has no application in any case covered by § 264. But, by its very terms, subsection (e) (4) of § 264 only relates to a case covered by § 264. Section 264 (e) (4) provides that "[t]his *section* does not prohibit the trial judge after an acquittal or dismissal from ordering immediate return of all property seized." (Emphasis added.) By stating that this *section* does not prohibit the return of all property by the criminal trial judge, the Legislature was obviously referring to money seized under § 264 (a) and subject to the procedures of § 264 (c) and (d). Subsection (e) (4) of § 264 is addressed solely to the other parts of § 264, and was obviously designed to insure that subsections (a)-(d) of § 264 were not construed or applied to prohibit the alternate procedure of a return order in the criminal case. As shown by its plain language, the sole purpose of subsection (e) (4) was to prevent a holding like that of the majority today. Unfortunately, the Legislature was totally unsuccessful.

The majority, apparently recognizing that its construction of § 264 (e) (4) cannot be justified by the statutory language, ultimately concludes that § 264 (e) (4) cannot be reconciled

with the rest of the statute and that " 'there is [an] inescapable conflict' " between subsection (e) (4) and the remainder of § 264. In this manner, the majority effects a repeal of § 264 (e) (4), thus violating the settled principle that all parts of a statute are to be harmonized and given effect.[10] In my view, the majority strains to find a conflict between subsection (e) (4) and the remainder of § 264. There simply is no such conflict.

Subsection (e) (4) was added to § 264 by Ch. 720 of the Acts of 1977, which also generally revised the other provisions of § 264. Earlier in its opinion, the majority points to the notes of the Senate Judicial Proceedings Committee suggesting a need to streamline forfeiture procedure because of the number of cases in Baltimore City. The majority then refers to the change made in § 264 (a), whereby conditional title is said to vest immediately in the local government custodian, and the complete re-writing of subsection (d) including the varius presumptions in *civil* actions.[11] Later, in discussing subsection (e) (4), the majority states: "It hardly seems logical that the purpose [of streamlining the procedure] would be served, however, by tacking on a section at the end of § 264 that would abrogate the elaborate procedure of the statute by allowing the return of money absent a con-

---

**10.** *See, e.g.,* Rome v. Lowenthal, 290 Md. 33, 41, 428 A.2d 75 (1981); Hope v. Baltimore County, 288 Md. 656, 666, 421 A.2d 576 (1980); Brown v. Brown, 287 Md. 273, 285, 412 A.2d 396 (1980); Equitable Trust Co. v. State Comm'n, 287 Md. 80, 89, 411 A.2d 86 (1980); Condominium Owners v. Supervisor, 283 Md. 29, 32, 388 A.2d 116 (1978); Schweitzer v. Brewer, 280 Md. 430, 438, 374 A.2d 347 (1977); Blumenthal v. Clerk of Cir. Ct., 278 Md. 398, 403, 365 A.2d 279 (1976); City of Baltimore v. United Five & Ten Cent Stores, Inc., 250 Md. 361, 368-369, 243 A.2d 521 (1968); Austin v. Buettner, 211 Md. 61, 69-70, 124 A.2d 793 (1956).

**11.** As pointed out by the County Attorney's Office at the circuit court hearing in *Goldberg,* the changes made in 1977, particularly relating to the immediate vesting of title, were occasioned by a United States District Court case holding that federal tax liens took priority over the claims of Baltimore City to money seized in a gambling arrest. United States v. Mayor & City Council of Baltimore, 416 F.Supp. 380 (D.Md. 1976), *aff'd in part and reversed in part,* 564 F.2d 1066 (4th Cir. 1977). The federal court cases had relied upon the theories set forth in Gatewood v. State, 264 Md. 301, 285 A.2d 623 (1972); State v. Greer, 263 Md. 692, 284 A.2d 233 (1971); and Pr. George's Co. v. Blue Bird Cab, 263 Md. 655, 284 A.2d 203 (1971), which dealt with the earlier Maryland statutory provisions relating to forfeiture.

sideration of the prevailing presumptions and character of the money." Of course, the wisdom of a statutory provision is a matter for the Legislature and not this Court. In addition, permitting the criminal trial judge to order an immediate return of seized property does not "abrogate" the remainder of the statute; it merely provides an alternate procedure in the limited circumstances of an acquittal or dismissal of the criminal charges. Also, there was no need to guide the criminal trial judge with statutory presumptions, as he would be intimately familiar with the evidence concerning the seized property. Moreover, subsection (e) (4) is entirely consistent with the purpose of streamlining the procedure to reduce a backlog of cases in Baltimore City.

Although the purpose underlying subsection (e) (4) may be different from the purpose underlying the remainder of Ch. 720 of the Acts of 1977, such difference in purpose does not create a conflict. Moreover, the difference in purpose is explained by the legislative history. Ch. 720 originated as Senate Bill 566. The bill as introduced by the chairman of the Baltimore City Senate delegation, as it emerged from the Senate Judicial Proceedings Committee, and as it passed the Senate, did not contain subsection (e) (4). Subsection (e) (4) was a House of Delegates addition proposed from the floor by Delegate Arnick, 1977 House of Delegates Journal at 3725.[12] Therefore, one would not necessarily expect the purpose of subsection (e) (4) to be reflected in the provisions previously adopted by the Senate Judicial Proceedings Committee.[13]

---

12. Delegate Arnick, along with Delegate Murphy, had also been the sponsor the year before of House Bill 902, which had added subsection (c) to Art. 27, § 551.

13. The majority suggests one additional reason for the inapplicability of § 264 (e) (4). The opinion points out that § 264 (e) (4) authorizes a motion in the criminal case after "an acquittal or dismissal." While acknowledging that the circuit court case was "dismissed," the majority contends that, because a dismissal by the State is ordinarily equivalent under Maryland law to a nol pros, a dismissal on the State's motion is not a "dismissal" within the meaning of § 264 (e) (4). This construction is totally unsupported by the statutory language. Section 264 (e) (4) covers any "dismissal," without distinguishing a dismissal upon the State's motion from a dismissal upon the defendant's motion. No reason is advanced by the majority for distinguishing between the two types of dismissals.

### (3)

The majority's interpretations of Art. 27, § 551, and Art. 27, § 264 (e) (4), clearly frustrate the purpose of those sections. Enacted in 1975, 1976 and 1977, §§ 551 (b), 551 (c) and 264 (e) (4) were obviously intended to overcome, to a large extent, this Court's opinions in *Gatewood v. State,* 264 Md. 301, 285 A.2d 623 (1972); *State v. Greer,* 263 Md. 692, 284 A.2d 233 (1971); and *Pr. George's Co. v. Blue Bird Cab,* 263 Md. 655, 284 A.2d 203 (1971). The majority proceeds as if those opinions were fully applicable to the present statutory scheme, and as if §§ 551 and 264 (e) (4) were never passed.

In subsections (b) and (c) of § 551, by authorizing motions for the return of property seized under a search warrant to be made to the criminal court, and by specifying the conditions under which return of such property can be made, the Legislature certainly intended that the criminal trial judge determine whether the conditions for return are met. Furthermore, by not requiring the judge to hold a hearing on the application, by not requiring that anyone be served, and by requiring that the State's Attorney receive a copy of the return order only if the application for return was "oral," the General Assembly clearly contemplated an informal or summary proceeding at which the criminal court judge would rely upon the prior proceedings in the criminal case as well as anything submitted in connection with the application for return. Art. 27, § 264 (e) (4), contemplates the same type of action.[14] In *Cole* this is precisely what was done, with the same judge who heard the criminal case making a determination that the statutory conditions for return of the money were met. Assuming that § 264 was applicable in the first place, I perceive no sound reason for overturning his decision.[15]

---

14. Whether § 264 (e) (4), was intended only to preserve motions falling within statutes such as 551 (b) or 551 (c), or whether § 264 (e) (4) also applies when there is no other statutory basis, is a question which need not be answered in this case.

15. Presumably the result of the majority's opinion and the judgment is

Judge Davidson has authorized me to state that she concurs with the views expressed herein.

---

that Mr. Cole's money is finally forfeited to the County under § 264 (d) (3). If this is so, it presents serious constitutional questions. It must be kept in mind that here we are dealing with the forfeiture of Cole's money because of offenses allegedly committed by him, and thus, regardless of state law form or labels, the matter is criminal in nature. United States v. United States Coin and Currency, 401 U.S. 715, 718, 720, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); Plymouth Sedan v. Pennsylvania, *supra,* 380 U.S. at 700 ("a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law.").

There has been no criminal conviction of Cole or anyone else in connection with the seized property, and no proceeding (either civil or as part of the criminal case) at which the seized property has been adjudicated contraband. The property is not contraband per se; rather, it is entirely lawful to possess money. Moreover, as the majority opinion points out, *supra,* p. 631, "[o]nce an ultimate disposition of *nol pros* was reached there was *prima facie* evidence that the money was not contraband."

Under these circumstances, I do not believe that a decision, that Cole's property has been finally forfeited to the government, comports with the due process clauses of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights. Moreover, the majority's holding (which goes beyond any forfeiture case of which I am aware), contravenes the principles of the just compensation clause of the Fifth Amendment and Art. III, § 40, of the Maryland Constitution.